**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3270
_____

UNITED STATES OF AMERICA

v.

NILDA MORTON,
                    Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 3-17-cr-00034-001)
District Judge: Hon. Curtis V. Gomez
_____

Argued December 9, 2020

Before: SMITH, *Chief Judge*, CHAGARES,
and MATEY, *Circuit Judges*.

(Filed:  April 7, 2021)

A. Jeffrey Weiss      (Argued)
A.J. Weiss & Associates
6934 Vessup Lane
Charlotte Amalie
St. Thomas, VI 00802
*Counsel for Appellant*

Gretchen C.F. Shappert, United States Attorney
Alessandra P. Serano
Delia L. Smith        (Argued)
Office of United States Attorney
5500 Veterans Drive

United States Courthouse, Suite 260
St. Thomas, VI 00802
*Counsel for Appellee*

—————————

OPINION OF THE COURT

—————————

MATEY, *Circuit Judge*.

One of the more radical notions introduced at the founding of the American republic was the idea that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. From Madison's first broad formulation,[1] the Framers embraced the idea that citizens could demand the government prove each element of an alleged crime without their assistance.

Nilda Morton followed that path. After pleading guilty to drug trafficking, she agreed to cooperate with the United States Attorney for the District of the Virgin Islands ("DVI"). But her agreement was narrow, providing no immunity nor barring anyone else from bringing fresh charges. So when the DVI summoned Morton to testify about new criminal activities, she invoked the privilege in the Fifth Amendment. Dissatisfied, the DVI demanded she assist, arguing she faced no new peril. And when she still declined, the DVI obtained an indictment for criminal contempt and secured a guilty verdict. All fair if, as the DVI claimed, Morton's invocation was improper. Answering that question required answering another question: whether the testimony the DVI sought could not have possibly tended to incriminate Morton in new crimes. Because *that* question remains unanswered, the District Court's order requiring Morton to testify was invalid. And without a valid court order, there is no criminal contempt. We will vacate Morton's contempt conviction and reverse the District Court's denial of her motion for a judgment of acquittal.

———————

[1] Madison's proposal did not limit the privilege to criminal cases. Madison's Speech, June 8, 1789, in 1 Debates and Proceedings in the Congress of the United States (Annals of Congress), 1st Cong., 1st Sess., 451–52.

# I. BACKGROUND

## A.     Morton's Crimes, Arrest, and Cooperation

In 2017, Morton pleaded guilty to possession with intent to distribute cocaine[2] and received a 97-month prison sentence. In her written plea agreement, she admitted her role in an enterprise that included shipping cocaine from the Virgin Islands to the continental United States. She explained the scheme involved commercial flights destined for New York and Miami, with money from the transactions routed through Cleveland before delivery back to St. Thomas. Nobody disputes that part of the story.

The DVI claims there is more to tell, and that during the investigation, intercepted telephone calls between Morton and Vernon Fagan, an alleged co-conspirator, reveal Morton sold cocaine to a man in New York named Alexci Emanuel. Morton, the DVI explains, asked Fagan to collect the proceeds from that sale in exchange for a finder's fee of two kilograms of marijuana. But for whatever reason, this story appears nowhere besides the DVI's legal briefs in this appeal, and is not mentioned, let alone admitted, in Morton's plea agreement.

Morton also entered into a separate cooperation agreement with the DVI. There, she agreed to provide all information about her knowledge of and participation in any crimes. Neither the plea nor cooperation agreement offered immunity, and each bound only Morton and the DVI. The arrangement worked well for a time, and Morton testified as a witness for the DVI in several matters.

Then, she was called as a witness at a hearing to revoke Fagan's supervised release.[3] The DVI alleged Fagan tried to collect Emanuel's debt to Morton, a violation of his release

---

[2] In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii)(II), (b)(2).

[3] Juries convicted Fagan in two drug-trafficking cases. The first case led to a sentence of eighty months' imprisonment and a four-year term of supervised release. The second produced a 168-month term of imprisonment and five years of supervised release.

3

terms. Perhaps unsurprisingly, the DVI called Morton to testify about Fagan, Emanuel, the debt, and who owed what to whom. Maybe less surprisingly, Morton refused to testify.[4] Rightfully, the District Court advised Morton to consult with her just-appointed attorney[5] and after doing so, she again invoked the Fifth Amendment. The District Court then warned Morton that her invocation was improper and directed her to answer or risk charges of criminal contempt. Morton did not waver, declining to respond some twenty-seven times over at least nine separate warnings. Through all of this, the District Court did not state why Morton lacked a reasonable basis for her silence or how answering the DVI's questions could not reasonably tend to incriminate.[6]

---

[4] Possibly most surprisingly, the DVI seemed surprised by this turn of events. The record shows Juan Matos de Juan, Morton's attorney, told the DVI that he believed this testimony fell outside the scope of Morton's agreements, but the record offers no insight into whether, for example, the DVI sought to square their inquiry with Morton's agreements. Nor whether they raised Morton's reluctance with the District Court before all of this unfolded at the hearing.

[5] Morton's representation, like much else here, was unusual. A day before the Fagan hearing, Morton spoke with Matos de Juan, her attorney in her drug trafficking case, by telephone. But Matos de Juan was in Puerto Rico and could not appear at the hearing. When Morton took the stand and asserted the privilege, the District Court asked about her counsel, and then adjourned for a recess. During that recess, a marshal approached George Marshall Miller, an attorney in the courthouse on unrelated business, and advised Miller to come to Fagan's hearing. Dutifully, Miller reported, and the District Court appointed him to represent Morton. The Court permitted Miller and Morton to confer with Matos de Juan by phone, and twenty minutes later, the hearing resumed with Miller representing Morton.

[6] Morton's testimony proved unnecessary as the District Court found that Fagan violated the conditions of his supervised release and imposed two concurrent thirty-three-month sentences, one in each underlying criminal case.

## B.     Morton's Criminal Contempt Trial

Instead, the District Court announced Morton would face trial for criminal contempt. Obliging that suggestion, the DVI *then* indicted Morton for violating 18 U.S.C. § 401(3).[7] At trial, the DVI framed its case against Morton as a story of broken promises. She appeared at the revocation hearing, the DVI stated, "pursuant to agreements that she made with the United States." Morton, the DVI explained, merely had to "perform in accordance with the agreements," (App. at 86–87), because she already "agreed to provide these testimonies." Trial Transcript at 80, *United States v. Morton*, No. 17-cr-00034 (D.V.I. Sept. 4, 2018), ECF No. 52 ("Trial Transcript"). Despite those comments, the District Court declined to allow the DVI to introduce the plea or cooperation agreements into evidence, explaining they were "not in issue here." Trial Transcript at 91. Nor did the Court allow Morton to call attorney Miller as a witness to testify about the advice he provided at Fagan's hearing and her fear that "a whole bunch of different charges . . . could be brought if she gets up on the stand." (App. at 122.) By contrast, the Court did allow the DVI to introduce several excerpts from the revocation hearing transcript when the Court warned Morton her invocation of the Fifth Amendment was inappropriate.

The jury found Morton guilty, leading to a sentence of 37 months' imprisonment, running consecutive with her earlier 97-month sentence for her drug offenses. Morton filed motions under Rules 29 and 33 of the Federal Rules of Criminal Procedure, seeking a judgment of acquittal or a new trial. The District Court denied both motions, and she timely appeals.[8]

---

[7] Following Morton's repeated invocations of the Fifth Amendment, the District Court stated: "Okay. Ms. Morton, I want to advise you and give you notice that on September 20th there will be a trial to determine whether you have committed criminal contempt." (App. at 81.) The next day, the DVI filed an information charging her with one count of contempt. A grand jury returned an indictment on April 12, 2018, and the trial occurred later that month.

[8] 18 U.S.C. § 3231 and 48 U.S.C. § 1612 provided the District Court jurisdiction, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II. ANALYSIS

Morton raises several issues on appeal, but we focus on her argument under the Fifth Amendment. It is unclear whether Morton adequately preserved this issue before the District Court. We need not resolve this question, and we apply plain error review because Morton's conviction cannot stand even under that exacting standard. *See* Fed. R. Crim. P. 52(b). Rule 52(b) requires a plain error of law that affects "substantial rights." *Id.*; *United States v. Jabateh*, 974 F.3d 281, 298 (3d Cir. 2020) (citing *United States v. Olano*, 507 U.S. 725, 732–34 (1993)). If that exists, we can take corrective action "if the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).[9]

### A. The Propriety of Morton's Invocation of the Fifth Amendment

With the ratification of the Fifth Amendment, the concept that individuals should not be compelled to act as witnesses in their own criminal cases "became clothed in this country with the impregnability of a constitutional enactment." *Brown v. Walker*, 161 U.S. 591, 597 (1896). The Fifth Amendment's protections include more than just "evidence which may lead to criminal conviction," extending to "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 449, 461 (1975) (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). As a result, the key inquiry is whether the

---

[9] Rule 52(b) adopts the Supreme Court's earliest formulations on the power to notice unpreserved errors, limiting review to matters "absolutely vital to defendants." *Wiborg v. United States*, 163 U.S. 632, 658 (1896); *accord Clyatt v. United States*, 197 U.S. 207, 221–22 (1905). Consistent with that standard, the Court had "less reluctance to act under it when rights are asserted which are of such high character as to find expression and sanction in the Constitution or Bill of Rights." *Weems v. United States*, 217 U.S. 349, 362 (1910).

witness "reasonably believes" her testimony "could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972).

Mindful of that focus, where a witness, like Morton here, makes a "prima facie" invocation of the privilege, *United States v. Yurasovich*, 580 F.2d 1212, 1221 (3d Cir. 1978), it must be "*perfectly clear*, from careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency to incriminate." *Hoffman*, 341 U.S. at 488 (emphasis in original) (quotations omitted). So, for example, where a witness enjoys immunity, *Kastigar*, 406 U.S. at 449, or where "a guilty plea terminate[d] proceedings which embody *all* of the potential criminal charges to which a witness is exposed," *Yurasovich*, 580 F.2d at 1218 (emphasis in original), there is no chance of self-incrimination through compelled testimony. On the other hand, where a guilty plea leaves open possible crimes for further prosecution, and the testimony sought may reveal details relevant to those new crimes, the privilege against self-incrimination remains. *Yurasovich*, 580 F.2d at 1218.

So when Morton invoked her privilege, and the DVI objected, the District Court needed to determine whether she could have reasonably believed her testimony could incriminate, including by leading to evidence against her, before ordering her to testify. Finding no record of that analysis, we cannot conclude Morton's claim was unreasonable.

1.    Morton's Reasonable Concerns

We begin by considering why Morton might reasonably believe her testimony could, directly or indirectly, self-incriminate: 1) it is not clear that she waived her privilege for the solicited testimony as part of her plea agreement; 2) her plea and cooperation agreements did not insulate her from charges in other jurisdictions; and 3) despite the DVI's claims, she did not have immunity.

The DVI first argues that Morton was called to testify to the same conduct in her plea, waiving her Fifth Amendment

7

rights. But the mere existence of a plea agreement is not enough. Rather, the question is what that plea agreement says. And Morton's plea agreement says nothing about Fagan or the collection of a drug debt. The DVI responds that Morton "admitted that Fagan had assisted her by facilitating the collection of a drug debt." (Response Br. at 3.) That would indeed be relevant to waiver. But the DVI cannot point to anywhere in the record (or, not that it would be relevant, anywhere outside the record) where this admission occurred.[10] Nor can we find any such admission. If Morton did not admit these facts, she did not waive her right to assert the privilege. *See Yurasovich*, 580 F.2d at 1218.

And if Morton did not waive the right, it is easy to see why she worried about self-incrimination. No one, including Morton herself, disputes her involvement in a multi-state drug operation. On top of other drug offenses, she worried her testimony would lead to prosecution "for tax evasion, R.I.C.O. or a host of other federal crimes." (Opening Br. at 8.) Moreover, Morton's agreements with the Government promise only that the DVI would file no other charges against her for

---

[10] The DVI's tell appeared early in the briefing. The assertion that Morton "admitted" Fagan's assistance in collecting a debt is the only sentence without a record citation in their summary of the case history. The cards tip again when the DVI described Morton as an "immunized" witness, again, without a record cite. Rooting around for an answer to these mysteries is not our role, of course, as "[j]udges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) (internal quotation marks and citation omitted). So we asked the DVI to explain these unsupported claims at oral argument. They could not, but did confirm that Morton was not, as claimed, "immunized." Transcript of Oral Argument at 15:9–17:13, *United States v. Morton*, No. 18-3270 (3d Cir. Dec. 9, 2020), ECF No. 113.

That all leaves us rather skeptical that Morton ever "admitted" the solicited testimony. After foraging around in the record, it seems more likely the DVI intended to show Morton "admitted" to this conduct during a meeting with a Virgin Islands Police Officer—testimony the District Court declined to admit. (App. at 89–90.)

any crimes arising out of the same transactions, but they bound no one else.[11] *See United States v. Gebbie*, 294 F.3d 540, 550 & n.4 (3d Cir. 2002). In short, Morton could have reasonably believed her testimony would produce new criminal charges, and that is where the Fifth Amendment's privilege arises. Her invocation of that protection was proper.[12] We turn next to whether Morton's subsequent conviction for criminal contempt resulted from plain error.

## 2. The *Yurasovich* Framework

We have explained the steps for considering assertions of the Fifth Amendment. Once asserted, whether framed in ordinary or technical terms, the burden falls to the government to "make it 'perfectly clear' that the answers sought 'cannot possibly' tend to incriminate." *Yurasovich*, 580 F.2d at 1221 (quoting *Malloy v. Hogan*, 378 U.S. 1, 12 (1964)). That requires resolving any "ambiguity" and showing that the witness will not run the risk of self-incrimination. *Id.* It is a predictable standard that appropriately tasks the government

---

[11] The DVI dismissed this concern, arguing it would not be practical for other offices to file charges against Morton. As a practical matter, that is no comfort to Morton and would offer no defense should criminal charges arise. And what the DVI finds "practical" does not determine when the Fifth Amendment's protections apply. The people made that decision when they ratified the Fifth Amendment. And since that time, "[f]ormal requirements are often scorned when they stand in the way of expediency." *Neder v. United States*, 527 U.S. 1, 40 (1999) (Scalia, J., concurring in part and dissenting in part). Article III of the Constitution demands courts ensure those rights drive the system of criminal justice rather than taking a backseat to practicality.

[12] The DVI also argues that because Morton once testified as a witness for the Government, she could not assert the Fifth Amendment privilege here. That argument is incorrect, and we have explained "a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding." *In re Neff*, 206 F.2d 149, 152 (3d Cir. 1953). Of course, the DVI does not even claim Morton testified to this *same conduct* in any prior hearing.

with producing evidence and argument that honors the guarantees of the Constitution.

Here, the District Court did not follow that process. The Court did not ask the Government, at either the Fagan hearing or at the contempt trial, whether Morton's testimony might be self-incriminating. The Court should have asked the Government to make it "perfectly clear" any fear was unfounded before ordering Morton to testify. Without that colloquy, we, like the Court in *Yurasovich*, cannot be sure that Morton "transgressed the contours of [her] constitutional privilege." *Id.* And if her actions were within the contours of her constitutional rights, then she did not commit criminal contempt. *See In re Neff*, 206 F.2d 149, 151 (3d Cir. 1953) ("A witness' assertion of his constitutional privilege against self-incrimination, if properly claimed, cannot be contempt of court, however.").

The District Court's failure to require the Government to meet its burden was an error, the first required element under Rule 52(b). And as we next discuss, the error was plain and affected Morton's substantial rights.

**B.     The District Court's Error Was Plain**

Courts can only correct unpreserved errors when "plain," meaning "'clear' or, equivalently, 'obvious'" under current law. *Olano*, 507 U.S. at 734. When precedent speaks directly to the issue, it is fair to say current law is clear. And when the error veers from that precedent, there was a clear error.

Here, the District Court, before ordering Morton to testify, failed to determine that the solicited testimony could not possibly tend to incriminate despite a "prima facie" claim of privilege. *Yurasovich*, 580 F.2d at 1221. That is not a novel error, and closely parallels the facts in *Yurasovich*. And there, we explained that the Government must carry its burden before a court can determine whether a witness overstepped their Fifth Amendment rights. *Id.* That precedent makes the error here plain. *See Jabateh*, 974 F.3d at 299.

10

## C.  The Error Affected Substantial Rights

And that plain error affected Morton's "substantial rights." Morton need not prove her case would have ended differently but for the mistake, but she does need to show a "reasonable probability" that the outcome would have been different. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)). Put another way, she must show that "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Dominguez Benitez*, 542 U.S. at 83 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

That she has. Morton did not have immunity, making it reasonable to fear future prosecution stemming from her testimony. The District Court never required the DVI to prove her fears were unfounded. If, for instance, Morton had been able to present more evidence about her concerns—or, more significantly, if the DVI had been required to show that her testimony could not possibly tend to incriminate and could not meet that burden—it is reasonable to think the jury may have returned a different verdict. We cannot say, and therefore cannot say the error did not affect "the outcome of the district court proceedings." *Olano*, 507 U.S. at 734.

## D.  The Error Warrants Correction

Because there was a plain error affecting substantial rights, we may correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 736. Correction under Rule 52(b) is a matter of discretion rather than a mandate, *id.*, most appropriate when failing to act would lead to a "miscarriage of justice." *Id.* And the ultimate miscarriage of justice is a wrongful conviction.[13] *See id.* ("The court of appeals should no doubt correct a plain forfeited error

---

[13] As we noted in *United States v. Williams*, actual innocence only means that a remedy is necessary, and not that we automatically reverse, because "the discretion contemplated by Rule 52(b) is to be preserved" in all federal criminal direct appeals. 974 F.3d 320, 342 (3d Cir. 2020). We exercise that discretion here.

that causes the conviction or sentencing of an actually innocent defendant.")

If Morton remained silent to avoid giving testimony that might lead to further criminal charges, that decision enjoys protection under the Fifth Amendment. If she was acting within the bounds of the Fifth Amendment, charges for criminal contempt were improper. It is hard to envision an error that "seriously affects the fairness, integrity, *and* public reputation" of the judiciary more than a wrongful conviction. No person should be subject to criminal prosecution for knowing and invoking their fundamental rights in an appropriate scenario, and Morton is no exception to that rule.

### E.     The Error and The Conviction

The District Court plainly erred in its handling of Morton's invocation of the Fifth Amendment, and that error affected her fundamental rights. Failing to correct that decision on appeal will harm the fairness, integrity, and public reputation of judicial proceedings. But how does that error—neglecting to require the government to show it was "perfectly clear" that Morton's testimony could not possibly tend to incriminate—impact her conviction for criminal contempt? The answer rests in statute.

Section 401(3) of Title 18 of the United States Code permits federal courts to punish acts in "contempt of its authority" including "[d]isobedience or resistance to its lawful writ, process, order, rule, decree or command." A conviction for criminal contempt requires proof beyond a reasonable doubt showing the accused willfully and knowingly disobeyed "a valid court order." *In re Kendall*, 712 F.3d 814, 830 (3d Cir. 2013). *See also United States v. Beaulieu*, 973 F.3d 354, 358 (5th Cir. 2020) (describing the elements of criminal contempt as a specific order to testify that was willfully violated); *United States v. Trudeau*, 812 F.3d 578, 587–88 (7th Cir. 2016) ("The essential elements of a finding of criminal contempt under 18 U.S.C. § 401(3) are a *lawful* and reasonably specific order of the court and a willful violation of that order." (emphasis added)). Here, the District Court departed from the process provided in *Yurasovich*. And, as always, the prosecution shouldered the burden of proving every element of § 401(3)

12

beyond a reasonable doubt. *United States v. Nasir*, 982 F.3d 144, 162 (3d Cir. 2020) (en banc) (discussing *In re Winship*, 397 U.S. 358, 364 (1970)); *see also Taylor v. United States*, 136 S. Ct. 2074, 2085 (2016) (Thomas, J., dissenting).

Taken together, sharply departing from the procedures in *Yurasovich* rendered the District Court's contempt order invalid, and it means the DVI necessarily did not establish the first element required under § 401(3) at all, let alone beyond a reasonable doubt.[14] That failure "results in acquittal." *Nasir*, 982 F.3d at 176; *accord Burks v. United States*, 437 U.S. 1, 10–11 (1978) (holding that an appellate court's determination that the prosecution failed to prove an element of the charged crime "unmistakably mean[s] that the District Court had erred in failing to grant a judgment of acquittal"); *United States v. Harra*, 985 F.3d 196, 211 (3d Cir. 2021) ("[W]e have repeatedly found that the prosecution's failure to prove an element of an offense is sufficiently grave to amount to a 'miscarriage of justice' and a basis to reverse a conviction even on plain error review."). So we will reverse.[15]

### III. CONCLUSION

For these reasons, we will vacate Morton's conviction, reverse the District Court's denial of her Rule 29 motion, and remand the case for entry of a judgment of acquittal.

---

[14] Of course, charges of contempt for invoking the rights codified in the Fifth Amendment are different than ordinary instances of disregarding a judicial order. *See Maness v. Meyers*, 419 U.S. 449, 459–60 (1975); *see also United States v. Hendrickson*, 822 F.3d 812, 820 (6th Cir. 2016) (discussing the collateral bar rule applicable to contempt charges not related to assertions of Fifth Amendment rights).

[15] Because we reverse Morton's conviction, we need not evaluate her other arguments.