**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GEORGE MANUEL, AS ADMINISTRATOR OF THE ESTATE OF ROSEMARY K. MANUEL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD LEIGHTON; MONROETON ROD & GUN CLUB; MONICA LANDMESSER; THE NEW BUCKET, INC.; STAR MCKEAN; AND KATIE BRIDE | : | |
| | : | No. 589 MDA 2021 |

Appeal from the Judgment Entered April 23, 2021,
in the Court of Common Pleas of Bradford County,
Civil Division at No(s): 2016-CV-0123.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: JULY 11, 2022**

The Plaintiff in this wrongful-death action, George Manuel, Administrator of his mother Rosemary Manuel's estate, appeals from the judgment entered in his favor and against Richard Leighton for $594,945.21. The parties agree Mr. Leighton drove while drunk, collided with Ms. Manuel's car, and caused her death. The Administrator believes two bars — the Monroeton Rod & Gun Club ("the Gun Club") and The New Bucket, Inc.[1] — are also liable for his

---

[1] Mr. Manuel sued six individuals due to their roles as employees or directors of the bars. Lynn Ann Westbrook, Monica Landmesser, Paul Dodge, and Linda Staton are (or were) agents of the Gun Club, and Star McKean and Katie Bride are agents of The New Bucket. Ms. Westbrook, Mr. Dodge, and Ms. Staton are no longer parties to this case, so we removed their names from the
*(Footnote Continued Next Page)*

mother's death, because they served Mr. Leighton several beers prior to the incident. A Bradford County jury rejected the Administrator's claims against the bars. As explained below, we affirm.

The trial court summarized the facts as follows:

> This civil case arose out of the [March 13, 2014] death of Rosemary Manuel from a motor-vehicle accident that occurred as a direct result of the negligence of Richard Leighton who pled guilty in a separate, criminal proceeding to homicide by vehicle while driving under the influence of alcohol. Liability on the part of Mr. Leighton was admitted. *See* [N.T.], 8/21/20, at 171-72. The contested issues resulted from the Dram Shop action that [the Administrator] filed against . . . the two bars at which Mr. Leighton was served and consumed beer, The New Bucket and the [Gun Club] . . .
>
> The principal issue at trial was whether either or both bars served Mr. Leighton at a time when he was visibly intoxicated. Because video surveillance from each bar captured the day's events, there was no dispute that he was served at least eight beers at The New Bucket over 3 ½ hours (from a little before 12:00 noon to nearly 3:30 p.m.) and was served two beers at [the Gun Club] over less than 50 minutes (from about 3:40 p.m. to almost 4:30 p.m.). According to the testimony of the bartender at [the Gun Club], she told Mr. Leighton he'd "had enough" after observing him fumble with his cigarette and try to light it backwards. [N.T.], 8/20/20, at 230-235. After that, Mr. Leighton did not drink any more beer, leaving the rest of his unfinished beer on the counter. The crash occurred at or about 4:34 p.m., approximately 5 minutes after Mr. Leighton left [the Gun Club. *See* N.T.], 8/21/20, at 59-61.

_____

caption. The remaining three individuals presented joint defenses and appellate arguments with their respective bars. Thus, unless specifically stated otherwise below, any reference to their respective bars includes them as well, in their corporate capacities.

- 2 -

Trial Court Opinion, 4/23/21, at 1. A few hours later, Ms. Manuel died.

As mentioned, the Administrator sued Mr. Leighton. He also sued the two bars under theories of negligence *per se* (for allegedly violating the Dram Shop Act) and common-law negligence (for allegedly failing to serve alcohol and to operate their establishments in a reasonably prudent manner).

Ms. Westbrook, the manager of the Gun Club, served as its corporate designee in this lawsuit. Throughout her testimony, the Administrator's attorney asked Ms. Westbrook a string of hypothetical questions. Based upon her answers, the Administrator moved for a directed verdict against the Gun Club. The trial court denied his motion.

Also, during trial, the Administrator expressed concerns with the video from the Gun Club's security cameras. Notably, that video (which a third-party company burned to a CD and provided to the Pennsylvania State Police shortly after Ms. Manuel's death) plays back at superfast speed.[2] The video also has several recording gaps. The Administrator believed those gaps were the result of the Gun Club either deleting scenes or directing the third-party

---

[2] When we reviewed the Gun Club video, this Court's software allowed us to slow it by lowering the playback rate. When we reduced the playback rate to 1/10 the "normal" speed, the seconds on the camera's metadata-timestamp ran in close syncopation to the actual passing of seconds, and the people on screen moved around the bar at a natural pace. Thus, there is indisputable video evidence in the record that the State Police received a surveillance video that plays back at 10x the actual speed of events. The transcript reveals that no one knew how to slow the video at trial. Hence, the jury watched it at superfast speed, rather than at the actual pace of events from the date in question.

company to burn only certain sections to the CD. Thus, he sought a jury instruction on spoliation of evidence, which the trial court denied.

The Administrator's insinuation of an altered video prompted the Gun Club to ask one of its experts (Joseph Kolins) about the recording's gaps. The Administrator objected, because Mr. Kolins neither discussed nor opined on the gaps in his expert report. The trial court overruled the objection. Mr. Kolins testified that the gaps, which were each about 1 minute and 40 seconds in length, resulted from normal resets of the motion-detector camera. Thus, in the expert's opinion, no one altered the surveillance video.

At the conclusion of trial, based upon the parties' stipulations, the trial court directed a verdict finding Mr. Leighton negligent. After deliberations, the jury ruled that neither bar was negligent. The jury also awarded $500,000 in damages to the Estate of Ms. Manual from the car accident.

The trial court denied the Administrator post-trial relief, but granted $94,945.21 in delay damages, and entered a judgment in favor of the Estate. The Administrator timely appealed.

He raises the following five issues for our review:

1. Whether the trial court erred in not granting a directed verdict [for the Administrator] where the corporate designee [of the] Gun Club specifically admitted that its . . . bartender . . . served a visibly intoxicated [Mr.] Leighton an alcoholic beverage resulting in the death of [Ms.] Manuel and the jury was not instructed as to admissions of fact pursuant to Standard Jury Instruction 2.40 (Civ)?

2. Whether the trial court erred in not granting [JNOV in the Administrator's] favor where the evidence is such

that no two reasonable persons could disagree the verdict should have been entered for the [Administrator,] because on the date of this incident [Mr. Leighton] was visibly intoxicated at the time of the Trooper's interview; the undisputed testimony is that the time of the collision was only minutes after being served a second beer at the Gun Club; and thus, [Mr. Leighton] would have to be visibly intoxicated while being served at the Gun Club?

3.   Whether the trial court erred in not granting [the Administrator's] motion for post-trial relief where Mr. Kolins, the defense Dram Shop expert, was allowed to opine on video surveillance issues outside of the four corners of his report?

4.   Whether the trial court erred in not granting [the Administrator's] Motion for Post-Trial Relief where a mistrial should have been granted concerning defendants questions regarding [Ms. Manuel] possibly not wearing a seatbelt?

5.   Whether the trial court erred in not granting [the Administrator's] Motion for Post-Trial Relief where . . . the jury was not instructed as to spoliation and adverse inferences pursuant to Standard Jury Instruction 5.30(Civ)?

Administrator's Brief at 7-8.  We address each claim in turn.

## A.   *Alleged Admissions of Ms. Westbrook*

To begin, the Administrator seeks two different remedies based on his belief that Ms. Westbrook, the corporate designee, admitted liability on behalf of the Gun Club.  First, the Administrator requests that we award him a directed verdict on liablity.  Alternatively, he seeks a new trial and directive that the trial court charge the jury on party-opponent admissions.

- 5 -

Specifically, the Administrator seeks Pennsylvania Standard Jury Instruction 2.40 (Civ). We consider each sub-issue separately.

### 1. Judgment As a Matter of Law

Regarding his first sub-issue — that the trial court should have entered a directed verdict and thereby granted judgment as a matter of law[3] — the Administrator argues that Ms. Westbrook admitted during her deposition that the Gun Club served Mr. Leighton beer while he was visibly intoxicated. He

---

[3] We note that the Gun Club contends the directed-verdict request is moot at this point in the litigation. **See** Gun Club Brief at 18-19. A "legal question can become moot [due to] an intervening change in the facts of the case." **In re Gross**, 382 A.2d 116, 119 (Pa. 1978).

When a trial court grants a directed verdict, it "directs **the jury** to bring in the verdict that the court specifies." 9 STANDARD PENNSYLVANIA PRACTICE 2d § 58:70 (emphasis added). The factual change that arguably renders a post-trial request for a directed verdict moot is that the jury has already returned a verdict. Thus, after a trial has ended, there is no way for trial court (or this Court) to direct a verdict. Instead, the losing party may ask the trial court to "direct the entry of judgment in [that parties'] favor . . . ." Pa.R.C.P. 227.1(a)(2). In that respect, the Gun Club's point is well taken. The Administrator should have sought JNOV, rather than request "a directed verdict against the Defendant Gun Club . . . ." Administrator's Post-Trial Motion at 8, ¶ 18 (Wherefore Clause).

However, a motion for a directed verdict and a motion for JNOV are two sides of the same coin. They both seek judgment as a matter of law. Indeed, "Our standards of review when considering the motions for a directed verdict and . . . JNOV are identical." **Hall v. Episcopal Long Term Care**, 54 A.3d 381, 395 (Pa. Super. 2012) (some punctuation omitted). Thus, we decline to dismiss as moot the Administrator's post-trial request for judgment as a matter of law, because the relief he named is, for purposes of appellate review, substantively indistinguishable from the relief he should have requested. Instead, we will treat the Administrator's post-trial request for a directed verdict as if it were a motion for JNOV.

- 6 -

also claims that she admitted that serving Mr. Leighton beer was a proximate cause of Ms. Manuel's death. *See id.* at 15.

He asserts that Ms. Westbrook's testimony binds the Gun Club and results in it being liable, as a matter of law. The Administrator also includes block quotes of his questions to Ms. Westbrook concerning the Gun Club's alleged failure to implement policies and procedures, training, and other things that allowed Mr. Leighton, when visibly intoxicated, to be served at the bar. *Id.* at 22.

After extensive review, we conclude the Administrator waived this claim, due to insufficient development of the legal theory in his appellate brief. "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Trigg v. Children's Hosp. of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020).

As Chief Justice Baer has explained, Pennsylvania's "rules of appellate procedure are explicit that the argument within a brief must contain 'such discussion and citation of authorities as are deemed pertinent.'" *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) (quoting Pa.R.A.P. 2119(a)). "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority . . . that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him." *Id.* (some punctuation omitted). "Moreover, because the burden rests with the appealing party to develop the argument sufficiently, an appellee's failure to advocate for waiver is of no moment." *Id.*

Here, the Administrator has failed to include any "citation to **relevant** authority." **Id.** (emphasis added).

Instead of opening with any applicable law, the Administrator clutters his argument with pages of block quotes from the various transcripts. He does not consider our scope and standard of review for a denial of a directed verdict or JNOV. He likewise neglects to identify which of his claims of negligence (either negligence *per se* or common law negligence) he believes Ms. Westbrook admitted that the Gun Club committed. The cited testimony involves elements of both theories of liablity. But the Administrator does not identify which elements of the tort he claims were proven, much less explain how Ms. Westbrook's alleged admissions satisfy some or all of those elements as a matter of law.

As for his primary claim under the Dram Shop Act, nowhere does the Administrator cite or quote that statute, discuss that law in relation to the theory of negligence *per se*, or offer any precedent applying it. By not identifying the tort at issue, the Administrator has not apprised this Court as to what he believes the substantive law is, or how he wishes us to apply it to the evidence from trial.

Instead, this section of his brief is mostly long quotations from Ms. Westbrook's deposition and her trial testimony. **See** Administrator's Brief at 15-22. Only two pages of argument follow, and this cursory discussion is unclear, because the Administrator bounces back and forth between seeking JNOV and seeking a new trial with a jury instruction on admissions of fact.

*See id.* at 23-24. The Administrator seems to presume that, by reproducing whole sections of the trial transcript in his brief, this Court will simply extract an analysis from it. Instead, a thorough analysis, applying the substantive law at issue to all the facts of record, was necessary to establish any legal error that may have occurred. Such analysis is woefully absent here.

Ultimately, the Administrator claims that, even though Ms. Westbrook was misinformed as to the number of drinks Mr. Leighton consumed at the Gun Club while answering his hypothetical questions at her deposition, such "admissions of fact by a corporate designee are binding upon the corporation." *Id.* at 23. To support this legal assertion, the Administrator cites only one case, *Branham v. Rohm & Haas Co.*, 19 A.3d 1094, 1100 (Pa. Super. 2011)).

*Branham* is not relevant authority, because it contains no admissions by a corporate designee. That case involves a dispute over whether a non-Pennsylvania company, which was not a party to the underlying suit, had to produce a corporate designee in response to a subpoena. Thus, contrary to what the Administrator's brief implies, *Branham* does not hold that a designee's admissions are binding when made in response to unsubstantiated hypothetical questions during the designee's deposition. As a result, the Administrator has failed to cite any *relevant* law to support his argument or any "pertinent" authority, as Pa.R.A.P. 2119(a) requires.

In short, the Administrator has offered an undeveloped legal argument as to why he is entitled to JNOV based on supposed admissions, and this Court

"may not supply [him] with a better one." *Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 884 (Pa. Super. 2019). Indeed, this Court "shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue to be waived." *Commonwealth v. Cannavo*, 199 A.3d 1282, 1289 (Pa. Super. 2018), *reargument denied* (Jan. 29, 2019); *see also* Pa.R.A.P. 2119.

This sub-issue seeking JNOV is dismissed as waived.

2.      The Requested Instruction Jury Instruction

As part of his first issue, the Administrator seeks an alternative remedy of a new trial with a jury instruction on admissions of fact. Such instruction provides:

> The admission[s] of fact made by the [agent of the] [defendant] [plaintiff] in the answer to the [complaint] [or other pleading, document, statement, testimony] [has] [have] been offered by the [plaintiff] [defendant] and received in evidence. The [defendant] [plaintiff] is bound by [this] [these] admission[s].

The Standard Jury Instruction 2.40 (Civ). However, the Administrator did not request that the trial court give this jury instruction during the charging conference with the judge, nor did he file his proposed points for charge with the Prothonotary of Bradford County.[4]

According to the Administrator's Brief he "asked the [trial] court to give the above instruction, but the court refused to do so." Administrator's Brief

---

[4] We reviewed the certified record but did not find the Administrator's proposed points for charge.

at 24 (citing N.T., 8/20/20, at 243). The Administrator's citation leads this Court to a dead end. The only action that he took at that point of the trial was move for a directed verdict based upon the alleged admission of Ms. Westbrook. There is no mention of any jury instruction, much less the one at issue here. The parties and the trial court did not begin to discuss specific jury instructions until several pages later in the transcript.[5] *See* N.T., 8/20/20, at 259.

"[I]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Majorsky v. Douglas,* 58 A.3d 1250, 1258 (Pa. Super. 2012); *see also* Pa.R.A.P. 302(a).

Regarding the preservation of a challenge to a requested jury instruction, we note: "A requested point for charge that was presented to the trial judge becomes part of the record when the point is read into the record, or filed in the office of the prothonotary prior to filing a motion for post-trial relief regarding the requested point for charge." Pa.R.C.P. 226(a). "An appellate court will not review an objection to a ruling of a trial court regarding a point for charge unless the point for charge was (1) presented to the court

_____

[5] Even if the Administrator requested the jury instruction on admissions at another point of the trial, his failure to cite to that potential preservation also constitutes waiver under Pa.R.A.P. 2117. The appealing party must identify "the proceedings in the court of first instance . . . at which, and the manner in which, the questions sought to be reviewed were raised[, as well as t]he method of raising them (e.g. by a pleading, *by a request to charge and exceptions*, etc.)." Pa.R.A.P. 2117(c)(1),(2) (emphasis added). *See*, *e.g.*, *United States v. Morton*, 993 F.3d 198, 204 n.10 (3d Cir. 2021) (observing that appellate courts do not root around the record to resolve any "mysteries" the appellant has left unanswered).

- 11 -

and (2) made a part of the record by either reading the point into the record or filing it in the office of the prothonotary prior to filing a motion for post-trial relief." Pa.R.C.P. 226(a) *Note*.

In this instance, the Administrator neither read Pennsylvania Standard Jury Instruction 2.40 (Civ) into the record nor filed it with the prothonotary prior to seeking post-trial relief. Thus, he has failed to raise this claim in the court below to preserve it for appellate review.

We dismiss this sub-issue as waived, as well.

### B.     *Additional JNOV Request*

As his second claim of error, the Administrator asserts that the trial court should have granted him JNOV based upon two facts:  (1) the Pennsylvania State Police Officer observed that Mr. Leighton had slurred speech at the scene of the accident and (2) the Gun Club's toxicologist opined that Mr. Leighton would have had a blood-alcohol content ("BAC") of 0.198.

A party is entitled to JNOV if "no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." ***Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.***, 126 A.3d 959, 967 (Pa. Super. 2015).  Here, the record abounds with factual disputes over whether Mr. Leighton ever displayed signs of visible intoxication at either bar.  The parade of trial witnesses offered so many factual variations on what occurred that we can hardly list them all here, nor do we need to do so.  Two examples suffice.

First, Mr. Leighton testified that he probably was showing signs of visible intoxication.  But both bartenders testified that he did not, at least not until

- 12 -

the point where the Gun Club's bartender related that she cut him off. Thus, the testimony of these key witnesses conflicts.

Second, and perhaps more critical to the jury's fact-finding function, the parties offered conflicting expert opinions on whether Mr. Leighton likely showed signs of visible intoxication. The Administrator's expert testified that he did show those signs prior to being cut off. The defense's toxicologist opined that Mr. Leighton was a regular drinker with a higher-than-average tolerance; the toxicologist concluded that, despite Mr. Leighton's BAC being 0.198 when he left the Gun Club, he likely would have held his alcohol and would not have shown outward signs of intoxication. In other words, this issue came down to a classic battle of the experts, and the Gun Club's expert won.

These examples (and other conflicting testimony of record) created genuine issues of material fact as to whether and when Mr. Leighton exhibited outward signs of intoxication. As such, the jury could rationally reject the Administrator's assertion that Mr. Leighton must have displayed signs of intoxication at the Gun Club.

The toxicologist testified that slurred speech could have manifested itself in the ten minutes between when Mr. Leighton left the Gun Club and when the State Trooper arrived on the accident scene. And, even if Mr. Leighton slurred his speech at the Gun Club, the Administrator offered no evidence that the bartender served him a beer after he displayed that sign of intoxication.

Finally, the jury may have simply found the State Troopers' recollections of events to be erroneous. "The jury was free to accept all, some, or none of the testimony presented to them." *Spencer v. Johnson*, 249 A.3d 529, 571 (2021), *reargument denied* (May 24, 2021). This prerogative of the factfinder extends to disinterested witnesses, such as the State Troopers, who testified on behalf of the Administrator.

We therefore conclude that the trial court correctly denied JNOV to the Administrator.

### C.     Mr. Koplins' Testimony on Gaps in The Surveillance Video

Third, the Administrator asserts the trial court "erred" when it did not grant him a new trial, based upon the fact that Mr. Koplins explained the gaps in the Gun Club's surveillance video. This testimony went beyond the four corners of Mr. Koplins' expert report.

The Administrator implied during his opening statement and introduced evidence through his expert witness, Jeffery Jannarone, that the Gun Club deleted portions of the surveillance video. He then objected to questions by the Gun Club of its own expert, Mr. Koplins, concerning those gaps. The trial court overruled that objection, because (1) it had qualified Mr. Koplins as an expert in the field of video security[6] and (2) the Administrator opened the door

---

[6] To the extent the Administrator now complains that Mr. Koplins was not an expert in that field, this contention is waived. The Administrator did not object to the qualification of Mr. Koplins' expertise during trial, nor did he raise that issue in his Rule 1925(b) Statement.

to such questioning due to his assertions that the Gun Club tampered with the evidence.

The Administrator does not address our deferential standard of review for this issue. Critically, decisions on admissibility of evidence are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. **Lykes v. Yates**, 77 A.3d 27, 32 (Pa. Super. 2013).

> An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Importantly, an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion.

**Commonwealth v. Talley**, 265 A.3d 485, 530 (Pa. 2021) (citation omitted).

The Administrator fails to identify, much less establish, which of form of abuse of discretion the trial court allegedly committed by permitting the expert to rebut the Administrator's claims of evidence tampering. Instead, the Administrator offers eight pages of block quotes from the record, as if our standard of review were *de novo*. **See** Administrator's Brief at 31-40. He then reiterates the grounds for his objection, without explaining how the trial court's decision to overrule that objection overrode or misapplied the law, was "manifestly unreasonable, or was the result of partiality, prejudice, bias or ill-will." **Talley, supra,** at 530. Essentially, he wants us to rule on the admissibility of the evidence and determine whether we disagree with the trial court. This, we cannot do. **See id**.

Accordingly, the Administrator has not persuaded us that the trial court committed an abuse of discretion by allowing Mr. Koplins to testify beyond the four-corners of his pre-trial expert report to refute the Administrator's claim (made throughout his case-in-chief) that the Gun Club altered the surveillance video.

Moreover, the trial court reasonably concluded that the Administrator opened the door to permit the expert to rebut the claim that someone may have altered the video. Thus, even if the Administrator had properly framed his appellate argument to address our scope of review, we would not hold that the trial court abused its discretion.

This issue does not warrant relief.

### D.    *Failure to Move for Mistrial*

For his fourth issue, the Administrator argues that the trial court erred by not granting him a mistrial when the defense attorney cross-examined a witness regarding injuries Ms. Manuel may have suffered from her seatbelt.

The Administrator has not preserved this issue for appellate review. It is settled law in this Commonwealth that, "unless a party has raised a specific objection and moved for mistrial at trial, then any right to a new trial is waived." *Farese v. Robinson*, 222 A.3d 1173, 1184 (Pa. Super. 2019). Our review of the record reveals the Administrator's counsel never moved for a mistrial. *See* N.T., 8/19/21, at 365-67.

When discussion of Ms. Manuel's seatbelt injuries began, the attorney for the Administrator sought a sidebar conference where he stated, in relevant part:

> you [*i.e.*, defense counsel] were just going to say, "Do you know that the hospital report says [Ms. Manuel] wasn't wearing her seatbelt?" That's where you're going, and, if you do that, ***I'm going to ask*** for a mistrial and costs, because it's inadmissible, and you don't – that's all I'm telling you.

*Id.* at 365 (emphasis added).

The trial court told defense counsel, "You've been put on notice." *Id.* Hence, at this point, the Administrator only warned the defendants of a potential motion for mistrial.

Questioning resumed. A few moments later, the witness said, "I was pretty sure [the seatbelt] was latched. It was at least around her . . . I couldn't see where the seatbelt was latched." *Id.* at 366.

Defense counsel then said, "I didn't describe injuries as seatbelt injuries, so that's what I'm trying to figure out." *Id.*

Then the Administrator's attorney requested another sidebar to assert that his opponent "did exactly what I told him that he was going to do, and he was trying to do." *Id.*

"No, he didn't," the trial court replied. *Id.*

The Administrator's attorney said, "He's getting this [witness] to tell them –" *Id.*

"Okay, listen, the liability of the car accident is not an issue. He didn't even ask about it though. The witness just brought it up again in response to the question which was not related to that report," the court said. *Id.*

The sidebar concluded, as the Administrator's attorney told the court, "The record will reflect what the record reflects." *Id.* And, in fact, what the record reflects is that the Administrator's attorney did *not* move for a mistrial.

Thus, any post-trial claim, based on the nonexistent motion for a mistrial, is waived. *See Farese*, *supra*; *see also* Pa.R.C.P 227.1(b)(1).

### E.    *Spoliation and Adverse-Inference Instructions*

Finally, the Administrator contends the trial court erred by not instructing the jury on adverse inference. He requests that we award a new trial and direct the trial court to give the jury Pennsylvania Standard Jury Instruction 5.30 (Civ).

"[I]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Majorsky, supra* at 1258; *see also* Pa.R.A.P. 302(a). The Administrator did not request that the trial court give the jury Pennsylvania Standard Jury Instruction 5.30 (Civ) (on adverse inference) at trial. *See* N.T., 8/20/20, at 260-65.

During oral argument on the charge, the parties had extensive disagreement over Pennsylvania Standard Jury Instruction 5.60 (Civ) (on spoliation). The trial court read it verbatim to the attorneys and confirmed that it was ruling upon and rejecting the Administrator's request for that specific instruction. *See id.* at 264.

However, at no time during those arguments, did the Administrator or the trial court discuss Pennsylvania Standard Jury Instruction 5.30 (Civ) (on adverse inference). Thus, the Administrator did not raise Standard Jury Instruction 5.30 (Civ) (on adverse inference) at trial. And, as discussed above, he did not file his suggested points for charge with the prothonotary in violation of Pa.R.C.P. 226(a) *Note*. Accordingly, he has not preserved this instruction as a ground for post-trial relief or appellate review. ***See Trigg***, ***supra***; ***see also*** Pa.R.A.P. 302(a).

Furthermore, on appeal, the Administrator does not request a new trial be granted so that Pennsylvania Standard Jury Instruction 5.60 (Civ) (on spoilation) may be given. He limits his appellate issue and argument to the unpreserved instruction on adverse inference. ***See*** Administrator's Brief at 8. Notably, Pennsylvania Standard Jury Instruction 5.60 (Civ) (on spoilation) does not appear in the Administrator's brief; nor does he cite to it in his argument.

By failing to request and argue for Standard Jury Instruction 5.60 (Civ) in his appellate brief, the Administrator has waived this theory for a new trial, even though he sought the instruction at the trial. ***See*** Pa.R.A.P. 2116(a), 2119(a).

Hence, we dismiss the Administrator's final appellate issue as waived.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>07/11/2022</u>