UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 22-1786

UNITED STATES OF AMERICA

v.

JAMES CHANDLER,
Appellant

(E.D. Pa. No. 2-21-cr-00049-001)
_____

SUR PETITION FOR REHEARING
_____

Present: CHAGARES, Chief Judge, JORDAN, HARDIMAN, SHWARTZ, KRAUSE, RESTREPO, BIBAS, PORTER, MATEY, PHIPPS, MONTGOMERY-REEVES, and CHUNG, Circuit Judges

The petition for rehearing filed by appellant in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court en banc, is DENIED. Judges Bibas and Matey would have granted rehearing and file separate dissents sur denial of the petition for rehearing. Judges Restrepo would also have granted rehearing.

BY THE COURT

  s/  Kent A. Jordan
Circuit Judge

DATE: August 22, 2024
Tmm/cc: All Counsel of Record

*United States v. Chandler*, 22-1786

BIBAS, *Circuit Judge*, dissenting from denial of rehearing *en banc*.

For the reasons set forth in my dissent from the panel opinion, I would rehear this case *en banc*. When the Supreme Court voted 5-4 to retain *Auer* deference, it narrowed the doctrine's reach. Before finding ambiguity and deferring to an agency, first "a court must exhaust all the 'traditional tools' of construction." *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019) (quoting *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 n.9 (1984)). Our task is to construe the text "in all the ways" that we would without an agency's interpretation "to fall back on." *Id.* We may not proceed to deference unless our "legal toolkit is empty" and ambiguity persists. *Id.*

In that toolkit is lenity, "one of the oldest canons of interpretation." Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 128 (2010). For *Kisor* deference, lenity prevents agencies from using delegated power to expand criminal liability without going through proper lawmaking processes. Yet the panel majority held that agency deference trumps lenity. It found ambiguity where there is none and then deferred to an anti-defendant reading of the Guidelines enhancement for a "dangerous weapon." U.S.S.G. §§2A4.1(b)(3); 2B3.1(b)(2)(D). That turns our normal approach to construing criminal texts on its head, "replacing the doctrine of lenity with a doctrine of severity." *Crandon v. United States*, 494 U.S. 152, 178 (1990) (Scalia, J., concurring in the judgment).

That holding put us on the wrong side of a circuit split. At least three circuits hold that lenity trumps defer-

ence. *See Cargill v. Garland*, 57 F.4th 447, 469 (5th Cir. 2023) (en banc), *aff'd on other grounds*, 602 U.S. 406 (2024); *United States v. Campbell*, 22 F.4th 438, 446 (4th Cir. 2022); *United States v. Phifer*, 909 F.3d 372, 385 (11th Cir. 2018); *see also Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 730 (6th Cir. 2013) (Sutton, C.J., concurring) (reasoning that lenity trumps *Chevron* deference).

And since the panel decided this case, the Supreme Court has overruled *Chevron*. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024). The Court admitted that, in the past, it had sent "mixed signals" about the interaction between *Chevron* deference and criminal statutes. *Id.* at 2269. But no more. "[S]tatutes, no matter how impenetrable, do—in fact, must—have a single, best meaning." *Id.* at 2266. The rule of lenity helps us discern that best meaning.

Concurring, Justice Gorsuch was more explicit. While lenity and other canons "embody legal doctrines centuries older than our Republic, *Chevron* deference can make no such boast." *Id.* at 2286 n.5 (cleaned up). Indeed, "*Chevron* deference sits in tension with many traditional legal presumptions and interpretive principles, representing nearly the *inverse* of the rules of lenity, *nemo iudex*, and *contra proferentem*." *Id.* "The ancient rule of lenity is still another of *Chevron*'s victims." *Id.* at 2286.

In short, the issue is profoundly important. Our sister circuits see things differently. And though *Loper Bright*'s holding does not reach this case, its reasoning casts doubt on the majority's strong deference. Because we are not cleaning this issue up ourselves, the Supreme Court will have to.

*United States v. Chandler*, 22-1786
MATEY, *Circuit Judge*, dissenting from denial of rehearing en banc.

I would rehear this case because the ordinary meaning of a "dangerous weapon" can be determined using customary legal interpretation. Whether framed as "exhausting all the 'traditional tools' of construction," *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019), or an "appropriately rigorous scrutiny of an agency's interpretation of a regulation," *id*. at 633 (Kavanaugh, J., concurring in the judgment), our task is "hardly something new under the sun," Jeffrey A. Pojanowski, *Neoclassical Administrative Law*, 133 Harv. L. Rev. 852, 889 (2020). Now, as always, we look to the "signs the most natural and probable," 1 William Blackstone, Commentaries *59, to determine the law's ordinary meaning, mindful that "the liberty of considering all cases in an equitable light must not be indulged too far, lest thereby we destroy all law, and leave the decision of every question entirely in the breast of the judge," *id.* at *62. Following the signs here, "a dangerous weapon must, at a minimum, be able to kill or gravely harm another person." *United States v. Chandler*, 104 F.4th 445, 462 (3d Cir. 2024) (Bibas, J., dissenting).

In my view, the majority's decision results from two departures from duties laid out by the Constitution and directed by Congress. By too quickly abandoning its search for the best ordinary meaning through "'careful[] consider[ation]' [of] the text, structure, history, and purpose," *Kisor*, 588 U.S. at 575 (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 707 (1991) (Scalia, J., dissenting)), the majority finds "reasonable" "an agency interpretation contrary to clear statutory meaning,"

which, "is of course necessarily unreasonable," Adrian Vermeule, *The Deference Dilemma*, 31 Geo. Mason L. Rev. 619, 623 (2024). Equally troubling, the majority rescues the United States Sentencing Commission from what would otherwise follow from its perpetual inaction. If the Commission wants to expand "dangerous weapon" to mean "an object that is not an instrument capable of inflicting death or serious bodily injury," U.S.S.G. § 1B1.1 cmt. n.1(E)(ii), it may do so, because Congress has given it that power. Indeed, that is the Commission's entire purpose. 28 U.S.C. § 991(b)(1)(B) (The Commission shall "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants . . . while maintaining sufficient flexibility to permit individualized sentences.").

I would take that charge seriously and assume the Commission will amend the Guidelines if it prefers a new standard, one that can be debated, tested, and subjected to public comment and question. A slightly harder day's work to be sure, but not too much to ask before depriving citizens of their liberty. Such are the small costs, and the many benefits, of living in a republic where "rights drive the system of criminal justice" rather than take "a backseat to practicality." *United States v. Morton*, 993 F.3d 198, 205 n.11 (3d Cir. 2021).