**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1413
_____

UNITED STATES OF AMERICA

v.

ANTONIO MIZZELLE CLARK
A/K/A Antonio Menzell Clark,

Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 3-22-cr-00235-001)
District Judge: Honorable Malachy E. Mannion

_____

Argued on March 13, 2024

Before: BIBAS, MONTGOMERY-REEVES and ROTH,
<u>Circuit Judges</u>

(Opinion filed: August 27, 2024)

Matthew L. Clemente          **(Argued)**
88 N. Franklin Street
Second Floor
Wilkes-Barre, PA 18701

Counsel for Appellant


Patrick J. Bannon          **(Argued)**
Office of United States Attorney
235 N Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

Carlo D. Marchioli, Esq.
Office of United States Attorney
Middle District of Pennsylvania
Sylvia H. Rambo United States Courthouse
1501 N 6th Street, 2nd Floor
P.O. Box 202
Harrisburg, PA 17102

Counsel for Appellee

————————

OPINION OF THE COURT

————————

**ROTH**, <u>Circuit Judge</u>:

Antonio Clark pleaded guilty to possession of a firearm by a prohibited person after admitting he provided drugs to a straw-purchaser in exchange for unregistered firearms. Based on Clark's role in that trade, the District Court applied a sentencing enhancement for "possess[ion] [of] any firearm . . . in connection with another felony offense" under U.S.S.G. § 2K2.1(b)(6)(B). Clark appealed, arguing that receipt of a firearm in exchange for drugs does not qualify as possession of that firearm "in connection with" another crime. For the reasons that follow, we will affirm the District Court's judgment of sentence.

## I. Background

Antonio Clark was arrested at his Pennsylvania residence after law enforcement received a tip from a confidential source that he was illegally purchasing firearms while on parole for an unrelated state law conviction. Lawful searches of his person and residence turned up no firearms or drugs. However, after his arrest, Clark admitted to the police that he had illegally purchased approximately twenty guns from a straw-purchaser and re-sold them in New Jersey.[1] Clark also admitted that he had occasionally paid the straw-purchaser with drugs in addition to money.

---

[1] A forensic review of Clark's cell phone confirmed his admission. The record contains no evidence of how Clark's customers used the guns he sold to them.

Clark pleaded guilty to possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).[2] The probation office (PO) prepared a Pre-Sentence Report (PSR) in which it calculated a total offense level of 23, including a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).[3] That section applies if the defendant:

> used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense.[4]

---

[2] Although an as-applied challenge to the constitutionality of § 922(g)(1) is pending before this Court, Clark does not challenge his conviction under the statute. Moreover, we recently rejected an as-applied challenge to § 922(g)(1) on facts similar to those at issue here. *United States v. Moore*, No. 23-1843, 2024 WL 3629416, at *6 (3d Cir. Aug. 2, 2024) ("A convict completing his sentence on supervised release does not have a Second Amendment right to possess a firearm.").

[3] In addition to the four-level enhancement pursuant § 2K2.1(b)(6)(B), the total offense level calculation included (i) a base offense level of fourteen; (ii) a four-level enhancement based on the number of guns, as stipulated in the plea agreement; (iii) a four-level enhancement for trafficking firearms under § 2K2.1(b)(5); and (iv) a three-level reduction for acceptance of responsibility. Clark does not challenge any aspect of the offense level calculation other than the enhancement under § 2K2.1(b)(6)(B).

[4] U.S.S.G. § 2K2.1(b)(6)(B) (2021).

The PSR recommended applying the enhancement because Clark "possessed the firearm in connection with another felony offense (drug distribution) or transferred the firearms with knowledge, intent, or reason to believe they would be used in connection with another felony offense."[5]

Clark objected, asserting that providing drugs in exchange for firearms is legally insufficient to support application of the enhancement. In response, the PO submitted an addendum to the PSR, explaining that it recommended applying the enhancement because Clark "possessed a firearm or ammunition in connection with another felony offense (drug trafficking)."[6] The addendum further explained that Clark was "involved in the trading of cash, drugs, and firearms" and "admittedly purchased firearms from individuals who straw purchased them and subsequently traveled to New Jersey to re-sell the firearms for cash and illicit drugs."[7]

At sentencing, Clark argued that the enhancement did not apply because providing drugs in exchange for guns does not fall within the guideline's text as a matter of law. The government responded that the enhancement applied because Clark possessed the guns in connection with his sale of drugs, even if he did not use the guns while selling drugs. The District Court overruled Clark's objection and applied the enhancement pursuant to § 2K2.1(b)(6)(B). It concluded that "drug trafficking for which one receives guns . . . seems to fit

---

[5] PSR ¶ 16.
[6] PSR Addendum at 1.
[7] PSR Addendum at 1.

5

into the definition of 2K2.1(b)[(6)(B)] when it comes to [']in connection with another felony offense.[']"[8]  Clark appealed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We review de novo the District Court's interpretation of the Sentencing Guidelines.[9]  We review its application of the sentencing enhancement for abuse of discretion.[10]

## III. Discussion

U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level sentencing enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense."[11]  Clark argues that the District Court erred in applying the enhancement because he neither used nor possessed a firearm in connection with another felony offense. While Clark did not "use" a firearm in connection with another felony, he "possessed" a firearm in connection with another

---

[8] Appx. 67.  The court also concluded, by a preponderance of the evidence, that Clark had reason to know that he re-sold the guns to buyers who would possess them in connection with another felony offense.  However, we need not review that conclusion because we hold that Clark possessed firearms in connection with another felony offense.

[9] *United States v. Adair*, 38 F.4th 341, 347 (3d Cir. 2022).

[10] *United States v. Alowemer*, 96 F.4th 386, 388 (3d Cir. 2024).

[11] U.S.S.G. § 2K2.1(b)(6)(B) (2021).

felony offense:  drug trafficking.  Therefore, the District Court properly applied the enhancement.

### A. Clark Did Not "Use" a Firearm in Connection with Another Felony

In *United States v. Watson*, the Supreme Court addressed whether a defendant who provides drugs in exchange for a firearm "uses" the firearm in relation to a felony under 18 U.S.C. § 924(c)(1)(A).[12]  That statute did not define the term "use," so the Court relied on its "everyday meaning" to hold that an individual does not "use" a firearm if they *receive* it in a trade for drugs.[13]  In contrast, a defendant does

---

[12] *United States v. Watson*, 552 U.S. 74, 76 (2008).  Section 924(c)(1)(A) provides for an enhanced sentence for:
> any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . .

18 U.S.C. § 924(c)(1)(A).

[13] *Watson*, 552 U.S. at 79 ("The Government may say that a person 'uses' a firearm simply by receiving it in a barter transaction, but no one else would.  A boy who trades an apple to get a granola bar is sensibly said to use the apple, but one would never guess which way this commerce actually flowed from hearing that the boy used the granola.").

7

"use" a firearm if they *provide* the firearm and receive drugs in return.[14]

Section 2K2.1(b)(6)(B) does not define "use," so we also turn to the plain meaning of the term. For the same reasons provided by the Court in *Watson*, we hold that one does not "use" a firearm under § 2K2.1(b)(6)(B) simply by receiving it in a barter exchange. Thus, Clark did not "use" firearms in connection with drug distribution based only on his receipt of the firearms in exchange for the drugs.

## B. Clark Possessed a Firearm in Connection with Another Felony Offense

Although Clark did not "use" a firearm under the guidelines, § 2K2.1(b)(6)(B) still applies if he "possessed any firearm . . . in connection with another felony offense." Clark does not dispute that he possessed the firearms he received from the straw-purchaser, so the only issue left for us to decide is whether he did so "in connection with another felony offense."[15] We conclude that he did.

---

[14] *See id.* at 76 (citing *Smith v. United States*, 508 U.S. 223 (1993)).

[15] Clark does not dispute that his drug distribution qualifies as "another felony."

8

Clark argues that the enhancement only applies to a guns-for-drugs exchange if the defendant *provided* the gun, not if the defendant *received* the gun. In *United States v. Hester*, we construed the phrase "in connection with another felony offense" to mean the "firearm . . . facilitated, or had the potential of facilitating, another felony offense."[16] According to Clark, it would be unnatural to say that receipt of a gun in a drugs-for-guns exchange facilitated that exchange, so he did not possess a gun in connection with drug trafficking. Put differently, Clark asks us to read a similar directionality into the phrase "possessed . . . in connection with" as we read into the term "used." Clark accords too much weight to *Hester*, and we decline to adopt his interpretation of § 2K2.1(b)(6)(B).

Rather, our decision in *United States v. Navarro* dictates our holding.[17] In *Navarro*, as here, the defendant provided drugs in exchange for a gun, and the district court applied an enhancement under § 2K2.1(b)(6)(B).[18] We affirmed the district court's judgment on appeal, explaining that "the enhancement should apply when possession of the firearm facilitates, or has the potential of facilitating, the other offense."[19] There was "no doubt" that Navarro's conduct met that standard because "the drug distribution would not have

---

[16] *United States v. Hester*, 910 F.3d 78, 89 (3d Cir. 2018) (internal quotation and citation omitted).

[17] *United States v. Navarro*, 476 F.3d 188, 197 (3d Cir. 2007).

[18] *Navarro* concerned the predecessor guideline to § 2K2.1(b)(6)(B), which was codified then at § 2K2.1(b)(5). For the purpose of our analysis, the guidelines are interchangeable.

[19] *Navarro*, 476 F.3d at 197 (cleaned up).

occurred if Navarro had not possessed the firearm."[20]   The
same is true in this case.

We reject Clark's argument that *Navarro* is no longer
good law.   In brief, he argues that *Navarro* relied on an
interpretation of the Supreme Court's decision in *Smith v.
United States* that the Supreme Court later rejected in
*Watson*.[21]   But Clark reads *Navarro*'s citation to *Smith* too
closely.   Both *Smith* and *Watson* concerned the meaning of the

---

[20] *Id.*   Our holding in *Navarro* is also consistent with the
decisions of several other courts of appeals.   *See e.g.*, *United
States v. Gardner*, 602 F.3d 97, 102 (2d Cir. 2010)
("possession of a gun as consideration for some drugs . . . *does*
promote or facilitate that illegal sale" (emphasis in original)
(quoting *United States v. Frederick*, 406 F.3d 754, 764 (6th
Cir. 2005))); *United States v. Carillo-Ayala*, 713 F.3d 82, 96
n.12 (11th Cir. 2013) ("Receiving a firearm in exchange for
drugs would constitute possession in connection with a drug
offense").

[21] Clark's argument proceeds as follows:   (1) Before the
Supreme Court decided *Watson*, it held in *Smith v. United
States*, 508 U.S. 223, 225 (1993), that a defendant who
provides a firearm in exchange for drugs "use[s]" that firearm.
(2) *Navarro* cited *Smith* to conclude that "possession of a
firearm facilitates a drug transaction when that firearm serves
as an item of a trade." *Navarro*, 476 F.3d at 197.   (3) *Navarro*
assumed that *Smith*'s logic applied regardless of whether the
defendant provides or receives the gun in a guns-for-drugs
transaction.   (4) The Supreme Court rejected the extension of
*Smith* to cases in which the defendant receives the gun, so
*Navarro* does not survive.   As discussed *infra*, Clark misreads
*Navarro*.

10

word "use" in the context of a drugs-for-firearms exchange.[22] In contrast, *Navarro* concerned what it means to "possess" a firearm "in connection with another felony."[23] "Use" and "possess" are distinct terms, and we do not read them interchangeably. It may be unnatural to say that receipt of a gun is "use" of that gun, but the same is not true of "possession." A defendant who received a gun in a trade plainly possessed that gun.

Clark also reads the phrase "in connection with" too narrowly. In *United States v. Loney*, we held that the phrase "in connection with" should be "construed expansively" so that it may apply to "a wide range of relationships between the firearm possession and the other felony offense."[24] As a result, we expressly declined to require a causal nexus between firearm possession and the secondary felony.[25] We re-affirmed that interpretation in *United States v. Perez*, where we explained that the phrase "in connection with" merely requires "'some relationship or association' between the firearm and the other felony, which could be 'a causal or logical relation or other type of relationship.'"[26] Indeed, even the mere "potential

---

[22] *See Smith*, 508 U.S. at 227; *Watson*, 552 U.S. at 76.

[23] *Navarro*, 476 F.3d at 197.

[24] *United States v. Loney*, 219 F.3d 281, 284 (3d Cir. 2000).

[25] *Id.* at 285 ("Despite the wide variety of relationships covered by the usage of the phrase 'in connection with,' Loney urges that we narrow its meaning and adopt a test requiring the government to prove 'some causal nexus' between the gun and the felony, a standard he says was not satisfied in his case. We decline to adopt Loney's proposed test.").

[26] *United States v. Perez*, 5 F.4th 390, 397 (3d Cir. 2021) (quoting *Loney*, 219 F.3d at 284); *see also id.* at 398–99 ("We

11

of facilitating" the other felony offense is sufficient.[27]  When a defendant takes possession of a firearm as a direct result of drug trafficking, that possession bears a logical relation to the trafficking.[28]  That is precisely what Clark did.

Thus, Clark possessed the firearms he received in exchange for drugs in connection with another felony offense—drug trafficking—and the enhancement applies.

**IV.**

For the above reasons, we will affirm the District Court's judgment of sentence.

---

are further persuaded that the 'relationship' standard in *Loney* and *West* is the correct one because the Sentencing Commission itself adopted it.").

[27] *Navarro*, 476 F.3d at 197 (citation omitted).

[28] *Id.* (citing *Loney*, 219 F.3d at 287, and holding that "[u]nder this standard, there can be no doubt that Navarro's possession of the firearm during the drug transaction facilitated the offense.").