**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1899
_____

UNITED STATES OF AMERICA

v.

NAHSIEM MCINTOSH,
a/k/a Nahsiem McIntosh,
                              Appellant
_____

On Appeal from the District Court
For the District of Delaware
(D.C. No. 1-20-cr-00040-001)
District Judge: Honorable Colm F. Connolly
_____

Argued on July 30, 2024

Before: KRAUSE, RESTREPO, and MATEY, *Circuit Judges.*

(Filed: December 23, 2024)

Janet M. Bateman
Mary K. Healy [ARGUED]
Office of the Federal Public Defender
800 King Street
Suite 200
Wilmington, DE 19801
     *Counsel for Appellant*

Jesse S. Wenger [ARGUED]
Office of the United States Attorney
1313 N Market Street
Hercules Building, Suite 400
Wilmington, DE 19801
     *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


KRAUSE, *Circuit Judge*.

We are called upon once again to examine the authority of the Sentencing Commission to interpret its own Guidelines in the wake of *Kisor v. Wilkie*, 588 U.S. 558 (2019)—this time in the context of two sentencing enhancements, the first concerning theft of a semiautomatic firearm capable of accepting a "large capacity magazine," U.S.S.G. § 2K2.1(a)(4)(B), and the second concerning possession of a firearm "in connection with another felony offense," *id.* § 2K2.1(b)(6)(B). After Appellant Nahsiem McIntosh pleaded guilty to federal firearm offenses stemming from his burglary

of a sporting goods store, the District Court applied both enhancements as interpreted in the Commission's commentary to those Guidelines—commentary that McIntosh contends is not entitled to deference. He is mistaken. The relevant commentary reasonably interprets genuinely ambiguous Guidelines and is entitled to controlling weight because it implicates the Commission's substantive expertise. We therefore will affirm.

## I.       Factual and Procedural Background

On a spring night in 2020, McIntosh smashed the glass front door of the American Sportsman in Newark, Delaware, and entered with codefendant Derris Lloyd. After breaking several display cases, McIntosh and Lloyd grabbed a mix of handguns and larger firearms, including an AR-15-style weapon. The next day, law enforcement pulled over the car in which McIntosh was traveling. McIntosh exited the vehicle and began walking down an alley, stopping to throw a black grocery bag in a trashcan. One agent detained McIntosh while another agent searched the trashcan and confirmed that the bag contained a loaded semiautomatic pistol that was stolen from the sporting goods store the previous night. McIntosh was subsequently arrested.

A grand jury indicted McIntosh on three counts, and he pleaded guilty to two of them: (1) theft of firearms from a federal firearm licensee, in violation of 18 U.S.C. § 922(u); and (2) being a felon in possession of a firearm, in violation of 18

3

U.S.C. § 922(g)(1).[1]  Upon receiving his presentence report, McIntosh filed numerous objections, only two of which are relevant here.  First, McIntosh argued that the report incorrectly included a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), which applies when a defendant "possessed any firearm . . . in connection with another felony offense." Second, McIntosh challenged the application of a six-level enhancement under U.S.S.G. § 2K2.1(a)(4)(B) for possessing a "semiautomatic firearm that is capable of accepting a large capacity magazine."  After hearing argument and soliciting supplemental briefing, the District Court overruled McIntosh's objections and imposed a bottom-of-the-Guidelines sentence of 100 months for each of the two counts, to run concurrently. This appeal followed.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.  We review the District Court's interpretation of the Sentencing Guidelines *de novo*.  *United States v. Richards*, 674 F.3d 215, 218 (3d Cir. 2012).

## III.   Discussion

The Sentencing Commission promulgates Guidelines to facilitate "'uniformity' and 'proportionality'" in sentencing, *United States v. Payano*, 930 F.3d 186, 194 n.8 (3d Cir. 2019)

---

[1] The third count, for possession of a stolen firearm which had been shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(j), was dismissed in connection to the plea agreement.

4

(quoting *Molina-Martinez v. United States*, 578 U.S. 189, 192 (2016)), and those Guidelines are often self-explanatory, but not always. For this reason, the Commission has, over time, supplemented them with a plethora of interpretive commentary. The Supreme Court has described the Guidelines themselves as analogous to rules promulgated by administrative agencies, but the commentary as "akin to an agency's interpretation of its own legislative rules." *Stinson v. United States*, 508 U.S. 36, 45 (1993).[2]

For many years, consistent with the demands of *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) and *Auer v. Robbins*, 519 U.S. 452, 461 (1997), we gave the commentary "controlling weight" unless it was "plainly erroneous or inconsistent with the" Guidelines. *Stinson*, 508 U.S. at 45 (quoting *Seminole Rock*, 325 U.S. at 414). In 2019, however, the Supreme Court decided *Kisor v. Wilkie*, 588 U.S. 558 (2019), which, as we explained in *United States v. Nasir*, limited "what had been understood to be uncritical and broad

---

[2] According to federal law, the Guidelines—but not the accompanying commentary—must go through notice-and-comment rulemaking. *See* 28 U.S.C. § 994(x); *United States v. Castillo*, 69 F.4th 648, 663 (9th Cir. 2023). In practice, the Commission subjects the commentary, including the commentary at issue here, to the same procedure. *See Castillo*, 69 F.4th at 663 n.8; Sentencing Guidelines for United States Courts, 71 Fed. Reg. 4782, 4789–91 (proposed Jan. 27, 2006). However, because the Commission's practice of soliciting feedback on the commentary is "discretionary" and thus subject to change at any time, we treat the commentary as interpretive. *Castillo*, 69 F.4th at 663 n.8; *see also United States v. Riccardi*, 989 F.3d 476, 488–89 (6th Cir. 2021).

deference to agency interpretations of [their own] regulations," and prompted us to adopt a three-step test to ascertain if a particular provision of Guidelines commentary merits deference, 17 F.4th 459, 471 (3d Cir. 2021) (en banc).[3] First,

[3] The Supreme Court recently overruled the *Chevron* doctrine—which directed courts to defer to an agency's reasonable interpretation of a genuinely ambiguous statute that it administers—and declared that courts must now generally "exercise their independent judgment" to determine the "best reading of a statute." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263, 2273 (2024). But "[i]ssues surrounding judicial deference to agency interpretations of their own regulations are distinct from those raised in connection with judicial deference to agency interpretations of statutes enacted by Congress," *Kisor v. Wilkie*, 588 U.S. 558, 591 (2019) (Roberts, C.J., concurring in part), and *Loper Bright* did not cast doubt on the deference *Kisor* afforded to an agency's reasonable interpretation of its own genuinely ambiguous regulation. Thus, we and other Courts of Appeals have continued to defer to the Commission's commentary under *Kisor*. *See United States v. Chandler*, 104 F.4th 445, 450–55 (3d Cir. 2024) (applying *Kisor* to defer to the Commission's interpretation of a genuinely ambiguous Guideline), *reh'g en banc denied*, 114 F.4th 240 (3d Cir. 2024); *United States v. Boler*, 115 F.4th 316, 322 & n.4 (4th Cir. 2024) (deferring to Guidelines commentary under *Kisor* because "*Loper Bright* . . . did not address the issue of agency interpretations of their own regulations"); *United States v. Trumbull*, 114 F.4th 1114, 1117–18, 1118 n.2 (9th Cir. 2024) (continuing to defer to commentary under *Kisor* because the "Supreme Court did not call *Kisor* into question in *Loper Bright* . . . and . . . did not

we examine the underlying Guideline's "text, structure, history, and purpose" to determine whether it is "genuinely ambiguous." *United States v. Mercado*, 81 F.4th 352, 356 (3d Cir. 2023) (quoting *Nasir*, 17 F.4th at 471). If the Guideline is unambiguous, we disregard the commentary. *Id.* But if the Guideline is ambiguous, we "proceed to step two and consider whether the corresponding commentary is 'reasonable,' i.e., within 'the outer bounds of permissible interpretation.'" *Id.* (quoting *Nasir*, 17 F.4th at 471). If the commentary is in fact reasonable, we ask "whether the character and context of the agency interpretation entitles it to controlling weight." *Id.* (quoting *Nasir*, 17 F.4th at 471). We defer only if we answer yes to all three questions.

Today, we put two commentary provisions, both of which interpret U.S.S.G § 2K2.1, to the test. The first, found at Application Note 2, interprets § 2K2.1(a)(4)(B)'s enhancement for crimes involving a "semiautomatic firearm that is capable of accepting a large capacity magazine" to apply when the relevant firearm had a magazine "that could accept more than 15 rounds of ammunition." U.S.S.G. § 2K2.1 cmt. n.2. The second, found at Application Note 14(B), interprets § 2K2.1(b)(6)(B)'s enhancement for "us[ing] or possess[ing] any firearm or ammunition in connection with another felony offense" to apply "in a case in which a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm

---

overrule it"); *United States v. Ponle*, 110 F.4th 958, 961–63, 961 n.3 (7th Cir. 2024) (deferring to commentary under *Kisor* because deference to the Commission's interpretation of its own Guidelines "is different from *Chevron* deference").

during the course of the burglary." *Id.* cmt. n.14(B). We address each in turn.

## A. "Large Capacity Magazine"

The District Court applied a six-level enhancement because McIntosh's crimes "involved" a "semiautomatic firearm that is capable of accepting a large capacity magazine" and he was "a prohibited person at the time." U.S.S.G. § 2K2.1(a)(4)(B). For help with the term "large capacity magazine," the Court looked to Application Note 2, which defines such a magazine as capable of accepting "more than 15 rounds of ammunition." The parties do not dispute that one of the stolen guns was an AR-556, an AR-15-style rifle sold with a magazine capable of accepting more than 15 rounds. The only question is whether the District Court's deference to Note 2 was appropriate. Under the three-step analysis we articulated in *Nasir*, it was.

### 1. *Ambiguity*

We first ask whether the regulatory term "large capacity magazine" is genuinely ambiguous, i.e., "susceptible to more than one reasonable reading." *United States v. Caraballo*, 88 F.4th 239, 245 (3d Cir. 2023) (quoting *Kisor*, 588 U.S. at 566). Both parties concede that it is, and we agree.[4] "Large" is a

_____

[4] Here, on the premise that all AR-15s can accept aftermarket magazines containing up to 100 rounds of ammunition, our concurring colleague takes the position that McIntosh's stolen firearm was "unambiguously . . . capable of accepting a large capacity magazine." Conc. Op. at 4 (citation omitted). But

8

relational term subject to various interpretations. It could mean "having more than usual capacity or scope," implying the need to evaluate an object in relation to an average, or it could simply mean "dealing in great numbers or quantities." *Large*, Merriam-Webster Online Dictionary, https://perma.cc/HUF8-EG5S. Evincing this ambiguity, fourteen states and the District of Columbia have adopted numerical definitions of the term, ranging from 10 rounds to 17 rounds, in their respective penal codes. *See infra* note 8. As our concurring colleague recently put it: "[T]here simply is no such thing as a 'large capacity magazine.' It is a regulatory term created by the State, meaning no more than the maximum amount of ammunition the State has decided may be loaded into any firearm at one time. Sixteen rounds was large yesterday, eleven rounds is large today." *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Att'y Gen.*, No. 19-3142, 2022 WL 22860232, at *4 (3d Cir. Aug. 25, 2022) (Matey, J., dissenting). In short, because "exactly what is being regulated" by "the protean 'large capacity magazine'" has caused "confusion" and "not been clear," *id.* at *3, *4, we conclude the term is genuinely ambiguous.

---

that factual premise appears to rest on law review articles cited by neither party, and "[t]he normal rule [is] that this court considers only the factual record before the district court." *In re Am. Biomaterials Corp.*, 954 F.2d 919, 922 (3d Cir. 1992). We thus confine ourselves to the record, and the only evidence in the record is that the stolen firearm could hold more than 15 rounds of ammunition. *Cf. United States v. Abrego*, 997 F.3d 309, 312, 313 (5th Cir. 2021) (reversing a district court's finding that a firearm was capable of accepting a large capacity magazine solely because the firearm manufacturer's website indicated that "twenty-round magazines" came "standard with that firearm").

2.      *Reasonableness*

As the term "large capacity magazine" is indisputably ambiguous, we proceed to consider the reasonableness of the Commission's interpretation.

The question of reasonableness is more vexing, and it is here that the parties part ways. According to McIntosh, the commentary's 15-round specification is unreasonable in several respects: First, it creates unwarranted parity between firearms regulated under the National Firearms Act, *see* 26 U.S.C. § 5845(a), and otherwise legal semiautomatic firearms. Second, it unreasonably limits the sentencing flexibility endorsed in another provision of the Guidelines. Third, it defines a common type of firearm as "large." And fourth, it sets an arbitrary threshold that makes the commentary more legislative than interpretive. None of these arguments hold water.

The first is based on legislative history. In the Violent Crime Control and Law Enforcement Act of 1994, Congress banned the possession of "semiautomatic assault weapons," newly defined in 18 U.S.C. § 921(a)(30) according to a firearm's make and characteristics. Pub. L. No. 103-322, § 110102(a)–(b), 108 Stat. at 1996–98 (Assault Weapons Ban). The law also instructed the Commission to add a sentencing enhancement for certain crimes involving a "semiautomatic firearm." *Id.* § 110501(a), 108 Stat. at 1996, 2015. In response, the Commission amended § 2K2.1(a)—the Guideline at issue here—to raise the base offense level for crimes involving semiautomatic assault weapons up to the base level for crimes involving a "firearm that is described in 26

10

U.S.C. § 5845(a)," i.e., a firearm as defined by the National Firearms Act.

The Assault Weapons Ban expired in 2004, *id.* § 110105, 108 Stat. at 2000, leading to "inconsistent application" of § 2K2.1(a)'s enhancements under the now-expired 18 U.S.C. § 921(a)(30). Sentencing Guidelines for United States Courts, 71 Fed. Reg. 28,063, 28,070 (May 15, 2006). To clarify, the Commission amended § 2K2.1(a) by deleting the references to 18 U.S.C. § 921(a)(30) and replacing them with the term "semiautomatic firearm capable of accepting a large capacity magazine," which it defined in Application Note 2 as a semiautomatic firearm with a magazine capable of accepting more than 15 rounds of ammunition. *Id.*; *see also United States v. Gordillo*, 920 F.3d 1292, 1297–98 (11th Cir. 2019). The Commission maintained sentencing parity for offenses committed using such firearms and those committed using a firearm defined in 26 U.S.C. § 5845(a), which remains in operation.

McIntosh contends that it was unreasonable for the Commission to maintain this parity after the Assault Weapon Ban expired. But the sentencing enhancement applies only to "prohibited person[s]" who are not allowed to possess firearms in the first place. U.S.S.G. § 2K2.1(a)(4)(B). And as several courts have previously observed, "the Sentencing Commission has the authority to conclude that the possession of certain kinds of firearms by felons or other prohibited persons is especially dangerous, even if possession of such weapons by the general public is not otherwise prohibited by law." *United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009); *see also United States v. Roberts*, 442 F.3d 128, 130 (2d Cir. 2006) ("We are aware of no authority that prevents . . . the Sentencing

11

Commission . . . from incorporating by reference any definition they choose in the Sentencing Guidelines, whether or not that definition is contained in a currently operative provision of the United States Code."); *United States v. Marceau*, 554 F.3d 24, 30 (1st Cir. 2009); *United States v. Barron*, 557 F.3d 866, 871 (8th Cir. 2009).

McIntosh next argues that the commentary is unreasonable because it conflicts with U.S.S.G. § 5K2.17, a Guidelines provision that permits an upward departure when the defendant "possessed a semiautomatic firearm capable of accepting a large capacity magazine in connection with a crime of violence or controlled substance offense." According to McIntosh, Note 2's rigid definition of "large capacity magazine" conflicts with the flexibility embodied by § 5K2.17, which instructs that any upward departure should "depend upon the degree to which the nature of the weapon increased the likelihood of death or injury in the circumstances of the particular case." But we see no conflict because departures from an applicable Guidelines sentence are always discretionary and thus always involve some amount of flexibility. *See United States v. Powell*, 269 F.3d 175, 178–79 (3d Cir. 2001) (explaining that departures from the Guidelines are reviewed for abuse of discretion). And the very language that McIntosh associates with flexibility still specifies a numeric definition for "large capacity." *See* U.S.S.G. § 5K2.17 (defining a "large capacity magazine" as a magazine capable of accepting "more than 15 rounds of ammunition"). Any perceived conflict between Note 2 and § 5K2.17 is illusory.

In his third challenge, McIntosh asserts that it is unreasonable to interpret "large capacity magazine" to include standard firearm equipment. As he points out, most pistols

purchased in the United States today are sold with magazines capable of holding between 10 and 17 rounds, and the Commission itself recognizes that "semiautomatic firearms are used in 50–70 percent of offenses involving a firearm" and "represent the typical or 'heartland' case under the guidelines." Amendments to the Sentencing Guidelines for the United States Courts, 60 Fed. Reg. 25,074, 25,088 (May 10, 1995). According to McIntosh, such "common, standard equipment" is not "large"—it is the norm. Opening Br. 25.

True, the word "large" is relational and thus meaningless without reference to a "smaller" comparator. But though the term "large capacity magazine" contemplates the existence of magazines with smaller capacities, it does not imply, as McIntosh insists, that a "large capacity magazine . . . necessarily exceeds the standard magazine or has more capacity than the standard magazine." *Id.* at 27. Merriam-Webster explains that "large" can mean "exceeding most other things of like kind," but it can also mean "dealing in great numbers or quantities."[5] As the Ninth Circuit explained when rejecting this precise argument, "[s]omething can be both popular and large, such as the standard capacity magazine of [a] popular firearm," but the popularity of that firearm "does not mean that a magazine that can accept more than fifteen rounds is not also a 'large capacity magazine.'" *United States v. Trumbull*, 114 F.4th 1114, 1119 (9th Cir. 2024). Imagine a clothing store with three sizes: "small," "medium," and "large." Even if most customers wear a "large," that "fact does not transform the large size into nonlarge," *United States v.*

---

[5] *Large*, Merriam-Webster Online Dictionary, https://perma.cc/HUF8-EG5S.

13

*Martin*, 119 F.4th 410, 414 (5th Cir. 2024), and the store would still be justified in maintaining its existing sizes.

Finally, McIntosh contends that the Commission's adoption of a "bright-line floor" in its commentary impermissibly "expands" the Guidelines and is therefore not interpretive, but rather a "legislative policy choice" requiring notice-and-comment rulemaking. Opening Br. 29. In support, he cites two out-of-circuit cases, *Hoctor v. U.S. Department of Agriculture*, 82 F.3d 165 (7th Cir. 1996) and *United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021), but both are readily distinguishable.

In *Hoctor*, the Department of Agriculture had interpreted the regulatory term "structurally sound [facility]" to mean a facility with a perimeter fence at least 8 feet high. 82 F.3d at 168. The Seventh Circuit held that requirement to be "an arbitrary choice among methods of implementation" that could not "be derived from the regulation by a process reasonably described as interpretation" and was thus "legislative." *Id.* at 170. But while a 15-round magazine capacity, like an 8-foot fence, might seem like an "arbitrary" threshold, the error ascribed to the agency in *Hoctor* was its interpretation of a qualitative regulatory term by resort to a quantity, whereas the Sentencing Commission in Note 2 is interpreting a quantitative regulatory term—"large capacity magazine"—that, by its nature, calls for a numeric interpretation.[6]

---

[6] In any event, the Seventh Circuit explicitly cautioned that it was "not saying that an interpretive rule can never have a numerical component," *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d

*Riccardi* is no more persuasive. There, a defendant was convicted of stealing gift cards with an average value of $35 each, but his offense level at sentencing was determined using commentary[7] that assigned a "loss" of "not less than $500" for each stolen card. 989 F.3d at 479. Reasoning that "[n]o reasonable person would define the 'loss' from a stolen gift card as an automatic $500," *id.* at 486, especially when the actual value of the stolen gift card was a known quantity, the Sixth Circuit held that the commentary's "bright-line rule" does not fall within the "zone of ambiguity" of the Guideline's term "loss," *id.* at 480 (quoting *Kisor*, 588 U.S. at 576). But while that bright-line rule conflicted with the ordinary understanding of attributable "loss" at sentencing and expanded the Guideline's punitive effect to cover conduct that

165, 171 (7th Cir. 1996), and many courts of appeals have since upheld agencies' numeric interpretations of qualitative regulatory terms, *see, e.g.*, *United States v. Phillips*, 54 F.4th 374, 386 (6th Cir. 2022) (upholding Guidelines commentary interpreting a video as containing 75 "images"); *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 628–29 (9th Cir. 2018) (en banc) (upholding the Department of Labor's interpretation of the regulatory terms "occasionally" and "part of [the] time" as meaning "less than or equal to 20 percent of the time"); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880–81 (8th Cir. 2011) (same); *Warshauer v. Solis*, 577 F.3d 1330, 1340 (11th Cir. 2009) (upholding the Department of Labor's interpretation of the regulatory term "insubstantial value" as meaning $250 or less); *cf. United States v. Haggerty*, 107 F.4th 175, 178 (3d Cir. 2024) (interpreting the Guidelines term "images" in the video context to unambiguously mean number of frames per video).
[7] *See* U.S.S.G. §§ 2B1.1(b)(1), 2B1.1 cmt. n.3(F)(i).

never occurred, the 15-round specification in Note 2 falls within the "zone of ambiguity" of the word "large" and, if anything, *restricts* the punitive effect of U.S.S.G. § 2K2.1(a)(4)(B) by establishing a relatively high threshold below which the enhancement does not apply. Indeed, the threshold set by the Commission in Note 2 exceeds the thresholds set by many state legislatures.[8]

In sum, none of McIntosh's arguments cast doubt on the reasonableness of the Commission's interpretation of U.S.S.G. § 2K2.1(a)(4)(B) in Note 2, so we proceed to the third step of the analysis under *Nasir*.

---

[8] Currently, fourteen states and the District of Columbia regulate "large capacity" magazines in some capacity. Of those jurisdictions, 10 states and the District of Columbia limit magazine capacity to no more than 10 rounds. *See, e.g.*, Cal. Penal Code § 16740; Conn. Gen. Stat. § 53-202w(a)(1); D.C. Code § 7-2506.01(c); Haw. Rev. Stat. § 134-8(c); Md. Code Ann., Crim. Law § 4-305(b); Mass. Gen. Laws ch. 140, § 121; N.J. Stat. Ann. § 2C:39-1(y); N.Y. Penal Law § 265.00(23); Or. Rev. Stat. § 166.355(1)(d); R.I. Gen. Laws § 11-47.1-2(2); Wash. Rev. Code § 9.41.010(25). Two states restrict long guns to 10 rounds and handguns to 15 rounds. *See* 720 Ill. Comp. Stat. 5/24-1.10(a)(1); Vt. Stat. Ann. tit. 13, § 4021(e)(1). Colorado is the only state to adopt a 15-round numeric threshold, *see* Colo. Rev. Stat. § 18-12-301(2)(a)(I), while Delaware—the only state with a higher threshold than U.S.S.G. § 2K2.1(a)(4)'s Application Note 2—defines "large-capacity" as being able to hold "more than 17 rounds of ammunition," Del. Code. Ann. tit. 11, § 1468(2).

16

### 3. *Entitled to Controlling Weight*

At the third step, we determine whether Note 2 is entitled to controlling weight, that is, whether it represents the Commission's "official position," implicates the Commission's "substantive expertise," and reflects the Commission's "'fair and considered judgment' such that it is not simply a 'convenient litigating position.'" *Mercado*, 81 F.4th at 359 (quoting *Nasir*, 17 F.4th at 471).

McIntosh contends that Note 2 fails this test because it is an "arbitrary policy choice" that the Commission does not explain. Opening Br. 33. Not so. The Commission defined "large capacity magazine" in response to "inconsistent application" of § 2K2.1(a) resulting from the Assault Weapons Ban's repeal. 71 Fed. Reg. at 28,070. And regardless, the "fair and considered judgment" inquiry goes not to whether the commentary is arbitrary, but to whether the commentary represents a "convenient litigating position" or "post hoc rationalization." *See Caraballo*, 88 F.4th at 249; *United States v. Vargas*, 74 F.4th 673, 697 (5th Cir. 2023). Here, having gone through notice-and-comment rulemaking, it does not. *See Trumbull*, 114 F.4th at 1120–21 (holding that because Application Note 2's definition of "large capacity magazine" went through notice-and-comment and congressional review, it "was an exercise of the Commission's 'fair and considered judgment'" and thus entitled to deference under *Kisor*) (quoting *Kisor*, 588 U.S. at 579)).

In addition, Note 2 "implicates the Commission's expertise in '[d]eveloping proportionate penalties for hundreds of different crimes by a virtually limitless array of offenders,'" *United States v. You*, 74 F.4th 378, 398 (6th Cir. 2023) (quoting

17

*Mistretta v. United States*, 488 U.S. 361, 379 (1989)), and its "data driven" expertise concerning what types of weapons cause the most harm, *Mercado*, 81 F.4th at 360. Indeed, the determination that the enhancement should apply to those firearms capable of holding more than 15 rounds of ammunition falls squarely within the Commission's "discretionary authority to determine the relative severity of federal crimes." *Mistretta*, 488 U.S. at 377.

Because "Application Note 2's interpretation of 'large capacity magazine' . . . meets the extensive requirements for deference laid out in *Kisor*," *Trumbull*, 114 F.4th at 1121, we will affirm the District Court's application of § 2K2.1(a)(4)(B), *see also Martin*, 119 F.4th at 415 (concluding that "the commentary's definition of 'large capacity magazine' is authoritative" and "binding and controlling on courts").

### B. "Another Felony Offense"

The District Court applied a four-level enhancement under § 2K2.1(b)(6)(B) to reflect the fact that McIntosh "possessed . . . firearm[s] in connection with another felony offense."[9] Application Note 14(C) defines "another felony

---

[9] McIntosh does not contend that the phrase "in connection with" precludes the application of § 2K2.1(b)(6)(B) here, and it does not. As we recently clarified in *United States v. Clark*, "in connection with" does not "require a causal nexus between firearm possession and the secondary felony." 115 F.4th 245, 250 (3d Cir. 2024). Instead, the phrase is "construed expansively" to "apply to 'a wide range of relationships between the firearm possession and the other felony offense,'"

offense" as "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained," and Note 14(B) specifies that this enhancement applies when a defendant, "during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary."

McIntosh does not contest that his conduct at the American Sportsman constituted felony burglary under Delaware law in that he "knowingly enter[ed]" the store "with intent to commit a crime therein." Del. Code Ann. tit. 11, § 824. He argues only that the Commission's definition of "another felony offense" is not entitled to deference because, in his view, the Guidelines text unambiguously excludes firearm possession in the same course of conduct as the other felony offense. Once again, however, we will defer to the commentary because (1) the underlying guideline is "genuinely ambiguous," (2) the corresponding commentary is "reasonable," and (3) the "character and context of the agency

---

including any logical relationship and the firearm's mere potential to facilitate another felony offense. *Id.* (quoting *United States v. Loney*, 219 F.3d 281, 284 (3d Cir. 2000)). A relationship clearly existed here, as McIntosh broke into the sporting goods store for the purpose of stealing the firearms, and the possession of the firearm thus had the "potential of facilitating" the felony. *Id.* (quoting *United States v. Navarro*, 476 F.3d 188, 197 (3d Cir. 2007)).

19

interpretation entitles it to controlling weight." *Nasir*, 17 F.4th at 471 (quoting *Kisor*, 588 U.S. at 574–76).

### 1. *Ambiguity*

According to McIntosh, the phrase "another felony offense" as used in § 2K2.1(b)(6)(B) by its plain meaning "requires a distinction in time or conduct" between the firearm possession that resulted in conviction and the "felony offense" justifying the sentencing enhancement. Opening Br. 35. But that position finds support in neither the dictionary nor the case law.

To the first, Black's Law Dictionary defines the term "offense" as synonymous with "crime," which is "[a]n act that the law makes punishable,"[10] and Merriam-Webster defines the term "another" as "different or distinct from the one first considered."[11] That hardly clears things up. On the one hand, considered under the test set out in *Blockburger v. United States*, 284 U.S. 299 (1932), the "punishable" act of burglary is "distinct" from the "punishable" act of possession because each requires the Government to prove at least one element that the other does not.[12] And as the Fourth Circuit observed in

---

[10] *Offense*, Black's Law Dictionary (12th ed. 2024); *Crime*, Black's Law Dictionary (12th ed. 2024).
[11] *Another*, Merriam-Webster Online Dictionary, https://perma.cc/5UPK-54DB.
[12] Although the *Blockburger* test arose in the double jeopardy context—which is not relevant here—it provides a useful point of reference in holding that when a defendant's course of conduct "constitutes a violation of two distinct statutory

20

*United States v. Blount*, because "the *Blockburger* test was formulated for resolving . . . whether conduct by the defendant should be regarded as constituting a single offense or multiple distinct offenses," it arguably "provides the appropriate standard for determining whether a proffered enhancement offense qualifies as 'another felony offense.'" 337 F.3d 404, 408 (4th Cir. 2003). On the other hand, considered as a course of conduct, McIntosh's "act" of burglary was not necessarily "different" from his "act" of possession. So dictionaries only point up the term's ambiguity.

Case law then confirms it. After all, Note 14 was added to resolve a growing circuit split. *See United States v. Keller*, 666 F.3d 103, 107 (3d Cir. 2011). Some courts, including ours, held that the phrase "another felony offense," by its plain meaning, required "a distinction in time or conduct from the offense of conviction." *United States v. Fenton*, 309 F.3d 825, 828 (3d Cir. 2002); *see also United States v. McDonald*, 165 F.3d 1032, 1037 (6th Cir. 1999); *United States v. Szakacs*, 212 F.3d 344, 348–52 (7th Cir. 2000). Other courts, presaging the Fourth Circuit in *Blount*, read "another felony offense" by its terms to include a separate felony offense, as long as it had distinct elements. *See, e.g.*, *United States v. Luna*, 165 F.3d 316, 323 (5th Cir. 1999); *United States v. Kenney*, 283 F.3d 934, 938 n.3 (8th Cir. 2002). Indeed, the *Fenton* panel itself was split across these lines, with our esteemed colleague, Judge Roth, explaining in dissent that the sentencing enhancement was properly designed to account for the risk that "law enforcement officers or an innocent bystander will be shot

provisions," the defendant has committed two separate crimes if "each provision requires proof of a fact which the other did not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

21

when anyone, whether or not he is a felon, possesses a firearm during the commission of a felony," which is distinct from "the harm that arises when a felon possesses firearms" in general. *Fenton*, 309 F.3d at 829 (Roth, J., dissenting). And in deciding to defer to the newly promulgated Note 14 in *Keller*, a unanimous panel of this Court acknowledged that § 2K2.1(b)(6)'s use of "another felony offense" was indeed "ambiguous," and the commentary's clarification in Note 14 was "entirely consistent with the plain language of the guideline." 666 F.3d at 109. We based our decision in part on "[t]he breadth of opinion among appellate judges," which "suggests that the guideline is subject to different interpretations." *Id.*

To be sure, *Keller* does not "automatically retain its controlling force" after *Kisor*, which raised the threshold for finding "genuine ambiguity." *United States v. Adair*, 38 F.4th 341, 349 (3d Cir. 2022). But the views of those judges, along with colleagues on both sides of the circuit split, make clear that the disputed language is "reasonably susceptible of different interpretations"—the very definition of ambiguity. *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir.2005) (quoting *Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n.27 (1985)); *see United States v. Perez*, 5 F.4th 390, 396 (3d Cir. 2021) (taking note of a pre-*Kisor* finding of ambiguity while analyzing a post-*Kisor* challenge).[13]

---

[13] McIntosh contends that the judicial doctrine known as the "rule of lenity" is one of the "'traditional tools' of construction," *Kisor*, 588 U.S. at 575, that we must apply in determining if a Guideline is genuinely ambiguous, and that,

22

## 2. *Reasonableness*

In siding with those circuits that used an elements test, the Commission in Note 14(B) took a reasonable position. In Note 14(B), the Commission essentially construes "another felony offense" to mean conduct that would constitute a different offense from the crime of conviction under the familiar *Blockburger* test. Because felony firearm possession and state law burglary each require the government to prove "a fact which the other does not," *Blockburger*, 284 U.S. at 304, the two crimes can be reasonably viewed as "distinct"[14]—a view reinforced by the Guideline's use of the term "felony offense," which the commentary goes on to define as "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether or not a criminal charge was brought, or conviction obtained," U.S.S.G. § 2K2.1 cmt. n.14(C). As the Fourth Circuit has

---

applying that rule here, it resolves any ambiguity in his favor and forecloses resort to the commentary. In *Chandler*, however, we observed that the "interpretative tools" referenced in *Kisor* "do not typically imply resort to judicial doctrines," and we therefore rejected the argument that "when a guideline is ambiguous, before deferring to the Sentencing Commission's commentary, we must first apply the rule of lenity." 104 F.4th at 456. Rather, we explained, "the next analytical step called for by *Kisor* when a regulation is found to be genuinely ambiguous is an inquiry into the agency's interpretation of the regulation, not an application of separate judicial doctrines." *Id*.

[14] *Another*, Merriam-Webster Online Dictionary, https://perma.cc/5UPK-54DB.

explained, "[t]his definition necessarily focuses on the elements of the 'felony offense,'" as one cannot determine "whether conduct is 'punishable by imprisonment for a term exceeding one year' except by ascertaining that such conduct satisfies the elements of a particular crime." *Blount*, 337 F.3d at 407.

The Commission's explanation for its interpretation—"the potential that the presence of [a] firearm has for facilitating another felony offense," 71 Fed. Reg. at 28,071—is also reasonable. McIntosh argues that "there was no allegation that [he] possessed any firearms when he entered the sporting goods store, nor was there any allegation that [he] used the stolen firearms to commit any crimes after the theft." Opening Br. 48 (quoting *Fenton*, 309 F.3d at 827). But the Commission added the enhancement not to punish a perpetrator for additional crimes he committed while illegally possessing a gun, but rather to reflect the fact that having access to a firearm while committing another offense increases the *risk* that the perpetrator will, for example, shoot someone responding to a break-in. *See United States v. Chandler*, 104 F.4th 445, 452 (3d Cir. 2024) (explaining that the presence of a gun "raises the temperature during a crime"). That is why the firearm possession need not actually facilitate or cause the second offense; "mere potential of facilitating the other felony offense is sufficient." *United States v. Clark*, 115 F.4th 245, 250 (3d Cir. 2024) (internal quotations and citation omitted). As Judge Roth explained in her *Fenton* dissent, the baseline sentence for the crime of felon-in-possession "does not fully account for the additional risk addressed by [§ 2K2.1(b)(6)(B)], that law enforcement officers or an innocent bystander will be shot when anyone, whether or not

24

he is a felon, possesses a firearm during the commission of a felony." 309 F.3d at 829 (Roth, J., dissenting).

Finally, while no Court of Appeals has yet addressed whether the Commission's interpretation of "another felony offense" is reasonable under *Kisor*'s framework, existing precedent suggests that it is. Even before courts had the help of Note 14(B), two of our sister circuits held that "another felony offense" is best interpreted with reference to the *Blockburger* test, *see Blount*, 337 F.3d at 407; *United States v. Valenzuela*, 495 F.3d 1127, 1133 (9th Cir. 2007), and we had incorporated aspects of the test into our own understanding of the term, *see United States v. Lloyd*, 361 F.3d 197, 205 (3d Cir. 2004); *United States v. Navarro*, 476 F.3d 188, 196 (3d Cir. 2007), albeit in a manner that would not have allowed for the enhancement in McIntosh's case. Meanwhile, we are unable to identify any precedential opinions holding that Note 14(B), as least as it concerns the relationship between the offenses of unlawful possession and burglary, is unreasonable. Rather, what we see is a growing number of cases confirming that Note 14(B) is consistent with the text of the Guideline. *See, e.g.*, *Keller*, 666 F.3d at 109; *United States v. Morris*, 562 F.3d 1131, 1135–36 (10th Cir. 2009); *United States v. Hill*, 563 F.3d 572, 582 (7th Cir. 2009); *United States v. Stinson*, 978 F.3d 824, 828 (1st Cir. 2020). Ultimately, all available evidence suggests that Note 14(B) permissibly interprets "another felony offense."

### 3. *Entitled to Controlling Weight*

As with Note 2, McIntosh argues that Application Note 14(B) is not entitled to controlling weight because it neither implicates the Commission's substantive expertise nor reflects

25

its fair and considered judgment. This is not a winning argument. As to substantive expertise, the Commission is well positioned to opine on whether the presence of a gun increases the risks associated with a felony like burglary and how those risks should be punished. *See Mercado*, 81 F.4th at 360 (stating that the Commission has expertise concerning "substantive sentencing concerns" and "how successive crimes relate to one another"). And as to fair and considered judgment, Note 14 is not a "convenient litigating position" or a "post hoc rationalization," nor does it "conflict" with a prior interpretation. *Kisor*, 588 U.S. at 579 (citations omitted). As before, we will defer.

## IV.    Conclusion

The Sentencing Guidelines help courts "produce consistent, disciplined decisions and avoid excessive sentencing disparities." *United States v. Douglas*, 885 F.3d 124, 127 (3d Cir. 2018) (en banc). When the Sentencing Commission elucidates the meaning of an ambiguous Guidelines term in a reasonable manner, we cannot disregard its input simply because we would have interpreted the provision differently. Because the Commission did so here, we will affirm.

26

MATEY, *Circuit Judge*, concurring in the judgment.

I agree that the District Court properly determined McIntosh's base offense level under U.S.S.G. § 2K2.1(a)(4)(B) and correctly applied a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B). But I see no need to defer to the Sentencing Commission's commentary to the Guidelines. Neither the term "semiautomatic firearm that is capable of accepting a large capacity magazine," § 2K2.1(a)(4)(B), nor "another felony offense," § 2K2.1(b)(6)(B), is "genuinely ambiguous," *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019). Rather, after "exhaust[ing] all the 'traditional tools' of construction," *id.* at 575, "the best interpretation" of the provisions at issue emerges, *id.* at 632 (Kavanaugh, J., concurring in the judgment). Because there is "no need to adopt or defer to" any other interpretation, *id.*, I respectfully concur only in the judgment.

## I.

We "treat the Sentencing Guidelines as legislative rules, and the Sentencing Commission's comments interpreting its Guidelines as interpretative rules," *United States v. Banks*, 55 F.4th 246, 255 (3d Cir. 2022), and therefore apply *Kisor*'s framework to determine whether deference to the commentary is needed to interpret a Guideline provision, *id.* at 255–56; *see also United States v. Nasir*, 17 F.4th 459, 470–71 (3d Cir. 2021) (en banc).[1] Careful consideration of both Guidelines'

---

[1] Although we considered this question only a few years ago, I am doubtful we should still rely on the commentary to the advisory Guidelines. *See Nasir*, 17 F.4th at 471 ("[W]e may have gone too far in affording deference to the guidelines' commentary under the standard set forth in *Stinson*. Indeed,

1

"text, structure, history, and purpose" demonstrates that resort to the commentary is unwarranted. *Kisor*, 588 U.S. at 575.

Section 2K2.1(a)(4)(B) applies to offenses involving a "semiautomatic firearm that is capable of accepting a large capacity magazine." Large, as the majority explains, can reasonably be read to mean "more than usual capacity or scope" or "great numbers or quantities." Majority Op. at 9. And "[p]eople may disagree as to how many cartridges must fit into a magazine to make it 'large.'" *United States v. Trumbull*, 114 F.4th 1114, 1121 (9th Cir. 2024) (Bea, J., concurring in the judgment). But this "disagreement does not constitute ambiguity." *Id.* Instead, we must "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *see also Cabeda v. Att'y Gen.*, 971 F.3d 165, 186 (3d Cir. 2020) (Krause, J., concurring in part and concurring in the judgment). Put differently, when the language of the law is suitably firm, there is no need to reach for additional meaning as "the discretionary space of the public authority" has been fully occupied by the authoritative text.[2]

---

after the Supreme Court's recent decision in *Kisor* . . . it is clear that such an interpretation is not warranted."). *Compare United States v. Booker*, 543 U.S. 220, 245 (2005) ("So modified, the federal sentencing statute makes the Guidelines effectively advisory." (citation omitted)), *with Stinson v. United States*, 508 U.S. 36, 46 (1993) ("Amended commentary is binding on the federal courts even though it is not reviewed by Congress.").

[2] Adrian Vermeule, *Common Good Constitutionalism* 46 (2022). Of course, a "term may be ambiguous as applied to

Because no one disputes that the Ruger AR-556 that McIntosh's co-defendant stole is a semiautomatic firearm, the only question is whether that rifle is capable of accepting a large capacity magazine. Before the District Court, the parties agreed that the rifle can accept magazines containing more than fifteen rounds of ammunition. Indeed, the Ruger AR-556 is capable of accepting magazines containing substantially more than fifteen rounds, as AR-15 style rifles routinely accept magazines containing one hundred or more rounds. *See* E. Gregory Wallace, *"Assault Weapon" Lethality*, 88 Tenn. L. Rev. 1, 27 (2020) (noting that the AR-15's standard thirty-round magazine can be replaced with "aftermarket sixty-round and one hundred-round magazines available in box and drum versions").[3] And because AR-15 style rifles "must

some situations, but not as applied to others." *Ass'n of Battery Recyclers, Inc. v. U.S. Env't Prot. Agency*, 208 F.3d 1047, 1056 (D.C. Cir. 2000). But drilling down on the specific interpretative question, as viewed "through the lens of the precise dispute," *Cabeda*, 971 F.3d at 189 (Krause, J., concurring in part and concurring in the judgment), is precisely the type of "'traditional tool[]' of construction" that we "must exhaust" "before concluding that a rule is genuinely ambiguous," *Kisor*, 588 U.S. at 575. And resorting to deference based on a potential ambiguity not implicated in a given case distorts *Kisor*, transforming it from "a canon of last resort" into a mechanism for default deference.

[3] AR-15 style rifles like the Ruger AR-556 are typically sold with a standard magazine containing "twenty or thirty rounds" of ammunition. David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 Alb. L. Rev. 849, 859 (2015). But they are not limited to that size. *See United States v. Turner*, 61 F.4th 866, 873 (11th Cir. 2023)

accommodate an external magazine," James A. D'Cruz, *Half-Cocked: The Regulatory Framework of Short-Barrel Firearms*, 40 Harv. J.L. & Pub. Pol'y 493, 526 (2017), they are "capable of accepting" magazines with virtually any capacity.[4]

At bottom, no matter which of the majority's contemplated definitions of "large" one adopts, the Ruger AR-556 "unambiguously qualifies as a 'semiautomatic firearm that is capable of accepting a large capacity magazine.'" *Trumbull*, 114 F.4th at 1122 (Bea, J., concurring in the judgment) (quoting § 2K2.1(a)(4)(B)).[5]

---

(discussing an AR-15 loaded with fifty rounds of ammunition); *United States v. Gross*, 44 F.4th 1298, 1300 (10th Cir. 2022) (discussing a forty-five round AR-15 magazine); *United States v. Marchena-Silvestre*, 802 F.3d 196, 197 (1st Cir. 2015) (discussing an AR-15 "loaded with one round in the chamber and thirty-seven rounds in the magazine").

[4] Even if there was a genuine factual dispute, I would follow the usual course and remand the case to the District Court to determine the Ruger AR-556's ability to accept magazines of various sizes. *See United States v. Haggerty*, 107 F.4th 175, 190 (3d Cir. 2024).

[5] The majority clips one of my prior phrases: the "protean 'large capacity magazine.'" *See* Majority Op. at 9 (discussing *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Att'y Gen.*, No. 19-3142, 2022 WL 22860232, at *4 (3d Cir. Aug. 25, 2022) (Matey, J., dissenting)). I used that phrase to illustrate two points.

First, the term "large capacity magazine" has no objective meaning. *N.J. Rifle*, 2022 WL 22860232, at *4 (Matey, J., dissenting). That is true and irrelevant to this case since we are not interpreting "large capacity magazine" in

isolation, but a "semiautomatic firearm that is capable of accepting a large capacity magazine." That inclusive language easily sweeps in the firearm at issue here. So while there is no such thing as a "large capacity magazine," that does not matter in this case, because *whatever* a large capacity magazine is, the Commission has created a sentencing enhancement for offenses involving a firearm capable of accepting one. Should the Commission take more care to draft guidelines that are consistent with our natural rights? Yes. Is section 2K2.1(a)(4)(B) likely an impermissible imposition on our protections? Perhaps. But that does not render us incapable of determining what qualifies for the enhancement.

Second, as I demonstrated, prohibitions on the possession of "large capacity magazines" presumptively violate the Second Amendment. *Id.* at *3–4 (discussing *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Att'y Gen.*, 974 F.3d 237, 250 (3d Cir. 2020) (Matey, J., dissenting), *abrogated by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)). I welcome the majority's conclusion that the term "large capacity magazine" has no meaning. While our agreement makes no difference in today's case, it matters much tomorrow. So I reiterate my (now our) conclusion in full:

> It is a regulatory term created by the State, meaning no more than the maximum amount of ammunition the State has decided may be loaded into any firearm at one time. Sixteen rounds was large yesterday, eleven rounds is large today. The State is welcome to market its policy goals using catchy slogans, but the rights of our Republic are built on sturdier stuff. Stripping away the buzzwords reveals the real question: whether "the Second Amendment's plain text"

5

## II.

I likewise agree that the District Court correctly applied a four-level enhancement to McIntosh's sentence because he "possessed [a] firearm . . . in connection with another felony offense." § 2K2.1(b)(6)(B). McIntosh argues that section 2K2.1(b)(6)(B) "requires a distinction in time or conduct" between the conviction offense and the enhancement offense. Opening Br. at 35. It does not.

Careful textual review obviates any first-blush ambiguity in the phrase "another felony offense." "Another" means "[a]dditional," and "[d]istinct or different." *Another*, Black's Law Dictionary 91 (6th ed. 1990).[6] A "felony," of

protects possession of a firearm magazine, in which case "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. The only avenue around that presumption is proof—presented by the State—that its cap on magazine capacity "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19.

*N.J. Rifle*, 2022 WL 22860232, at *4 (Matey, J., dissenting) (citations updated). The constitutionality of the enhancement is not before us, nor is the continuing infringement on the natural right to arms posed by chameleonic limitations on rounds of ammunition. But those questions will arise and I will welcome this renewed focus on vagueness and the Second Amendment.

[6] *Accord Another*, Webster's New World Dictionary 57 (3d College ed. 1988) (defining "another" as "one more; an additional"; "different; not the same"; or "one of the same sort as; some other").

course, is "[a] crime of a graver or more serious nature than those designated as misdemeanors," which, "[u]nder many state statutes," means "any offense punishable by death or imprisonment for a term exceeding one year." *Felony*, Black's Law Dictionary 617 (6th ed. 1990). And an "offense" is "[a] felony or misdemeanor; a breach[7] of the criminal laws; [or a] violation of law for which penalty is prescribed." *Offense*, Black's Law Dictionary 1081 (6th ed. 1990).[8] Taken together, the best ordinary meaning of "another felony offense" is a "breach" or "violation" of the law that is distinct from the firearms offense. Succinctly, "another felony offense" is a distinct chargeable crime. Absent from the text is an additional requirement that the second offense be distinct in time or conduct from the underlying offense. The "text of the Guideline[] is clear enough that we need not rely on the commentary." *United States v. Merritt*, 102 F.4th 375, 378 n.3 (6th Cir. 2024).[9]

---

[7] "Breach" refers to "[t]he breaking or violating of a law, right, obligation, engagement, or duty, either by commission or omission." *Breach*, Black's Law Dictionary 188 (6th ed. 1990).

[8] *Accord Offense*, Webster's New World Dictionary 940 (3d College ed. 1988) (defining "offense" as "the act of breaking a law; sin or crime; transgression").

[9] The majority concludes that section 2K2.1(b)(6)(B) is genuinely ambiguous because of a pre-*Kisor* circuit split. *See United States v. Fenton*, 309 F.3d 825, 827 (3d Cir. 2002); *United States v. McDonald*, 165 F.3d 1032, 1037 (6th Cir. 1999); *United States v. Szakacs*, 212 F.3d 344, 350–51 (7th Cir. 2000). But "*Kisor* requires that we dig deeper" than the cases that came before it. *Reyes-Vargas v. Barr*, 958 F.3d 1295, 1307

* * *

Because sections 2K2.1(a)(4)(B) and 2K2.1(b)(6)(B) can be applied without reliance on the Sentencing Commission's commentary, I respectfully concur only in the judgment.

---

(10th Cir. 2020). As a result, "prior caselaw that had afforded *Auer* deference to the Commission's interpretive commentary without engaging in the *Kisor* process does not automatically retain its controlling force." *United States v. Adair*, 38 F.4th 341, 349 (3d Cir. 2022). And these "disagreements between judges at most suggest ambiguity. They do not prove it." *Sexton v. Panel Processing, Inc.*, 754 F.3d 332, 341 (6th Cir. 2014).